# Illinois Official Reports

## Appellate Court

---

### *Wisnasky v. CSX Transportation, Inc.*, 2020 IL App (5th) 170418

---

| | |
|---|---|
| Appellate Court Caption | SCOTT WISNASKY, as Next Friend and Kin and Administrator of the Estates of Dr. W., Deceased, and A.W., Deceased, and as Administrator of the Estate of Alyssa Sewell, Deceased, and as Father and Next Friend of Dy. W., a Minor, Plaintiff-Appellee, v. CSX TRANSPORTATION, INC.; CSX CORPORATION; JOHN BRADLEY; VANDALIA RAILROAD COMPANY; PIONEER RAILCORP, INC.; PIONEER RAILROAD SERVICES, INC.; THE ESTATE OF CRYSTAL ANNA; VANDALIA CIVIC ADVANCEMENT ASSOCIATION, INC.; VANDALIA LIONS CLUB, INC.; and THE CITY OF VANDALIA, ILLINOIS, Defendants (The City of Vandalia, Illinois, Defendant-Appellant). |
| District & No. | Fifth District<br>No. 5-17-0418 |
| Rule 23 order filed | March 13, 2020 |
| Motion to publish allowed | April 6, 2020 |
| Opinion filed | April 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Fayette County, No. 15-L-15; the Hon. Michael D. McHaney, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. Certified questions answered. |
| Counsel on Appeal | William P. Hardy, of Hinshaw & Culbertson LLP, of Springfield, Charles Pierce, of Pierce Law Firm, P.C., of Belleville, and Joseph A. Bleyer, of Bleyer and Bleyer, of Marion, for appellant.<br><br>Gregory L. Shevlin, of Cook, Bartholomew, Shevlin & Cook, LLP, of Belleville, and Robert L. Pottroff (*pro hac vice*) and Nathan L. Karlin (*pro hac vice*), of Pottroff & Karlin LLC, of Manhattan, Kansas, for appellee. |
| Panel | JUSTICE BARBERIS delivered the judgment of the court, with opinion.<br>Justices Moore and Wharton concurred in the judgment and opinion. |

**OPINION**

¶ 1    This cause comes before this court as an interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017). Plaintiff-appellee, Scott Wisnasky, as administrator of the estates of Dr. W., A.W., and Alyssa Sewell, and as father of Dy. W., filed a wrongful death and personal injury action against the above-named defendants after a tragic accident, which claimed the lives of two of his children, Dr. W. and A.W., and seriously injured a third, Dy. W., at a railroad crossing in Vandalia, Illinois. The accident also took the life of Crystal Anna, the children's mother, and her adult child, Alyssa Sewell. The circuit court of Fayette County certified two questions for permissive interlocutory review after it denied the defendant-appellant's, the City of Vandalia, Illinois (Vandalia), motion to dismiss that was filed in response to plaintiff's second amended complaint. The two questions certified for appellate consideration are as follows:

"1. Whether, assuming all well pled facts of Plaintiff's Second Amended Complaint (incorrectly titled 'Complaint at Law') are true, [Vandalia] is entitled to absolute immunity on the counts brought against [it] under one or more of the following provisions of the Local Governmental Tort Immunity Act: 745 ILCS 10/4-102, 10/2-201, 10/2-103, 10/2-104, 10/2-105 and/or 10/3-104[;] [and]

2. Whether, assuming all well pled facts of Plaintiff's Second Amended Complaint (incorrectly titled 'Complaint at Law') are true, [Vandalia] owed a duty to protect Crystal Anna and the occupants of her vehicle from the hazards associated with the railroad crossing where the accident occurred."

¶ 2    After this court initially denied Vandalia's petition for leave to appeal pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017), Vandalia filed a petition for leave to appeal with

the Illinois Supreme Court. The supreme court denied Vandalia's petition but entered a supervisory order directing this court to vacate its denial, allow the application for leave to appeal, and address the certified questions. Accordingly, we now issue this opinion.

¶ 3                                                I. BACKGROUND

¶ 4      The following facts were taken from the second amended complaint[1] filed by plaintiff on January 25, 2016, the pleadings, and other supporting documents. We limit the recitation to facts germane to the certified questions presented for our consideration.

¶ 5      Vandalia Lions Club, Inc. (Vandalia Lions Club), and Vandalia have jointly organized the annual community Halloween parade for more than 50 years. The parade typically draws more than 2000 spectators each year, which causes traffic congestion near the parade route due to road closures. There is a railroad crossing at the intersection of Sixth Street and Main Street (Sixth Street Crossing), located one block from the parade route, which is approximately 70 feet from gate-to-gate and contains two sets of train tracks—the mainline and the spur.

¶ 6      For the limited purpose of assisting the reader in understanding the layout of the Sixth Street Crossing, as described below, we take judicial notice of the following aerial photograph from Google Maps. See *People v. Clark*, 406 Ill. App. 3d 622, 633-34 (2010) (holding that maps from major online sites such as Google Maps are appropriate for judicial notice); see also *People v. Stiff*, 391 Ill. App. 3d 494, 503-04 (2009) (taking *sua sponte* judicial notice on appeal of the distance from one house to another using Google Maps).

---

[1]Plaintiff filed the original complaint on May 29, 2015, in the circuit court of Madison County. The matter was subsequently transferred to Fayette County. CSX Transportation, Inc., filed a third-party complaint naming Vandalia as a defendant. On October 20, 2015, plaintiff filed the first amended complaint adding Vandalia as a defendant. On January 25, 2016, plaintiff filed the second amended complaint, which added Vandalia Lions Club, Inc., and the Vandalia Civic Advancement Association, Inc., as defendants. The second amended complaint mirrored the first amended complaint but added Vandalia as a "railroad defendant." (For a list of the railroad defendants, see *infra* ¶ 10 n.2.) After filing the second amended complaint, plaintiff settled with all defendants, except Vandalia and the Vandalia Lions Club. On February 28, 2017, the circuit court dismissed with prejudice all counts against the Vandalia Lions Club, Inc., which, in turn, rendered Vandalia the sole remaining defendant. On June 2, 2017, the court made an express written finding that there was no just reason for delaying an appeal of the dismissal order pursuant to Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016). Plaintiff did not file an appeal.



Google Maps, https://www.google.com/maps/@38.9619045,-89.0973731,109m/data=!3m1!1e3 (last visited Jan. 2, 2020) [https://perma.cc/28V8-6GAV].

¶ 7    Sixth Street runs north and south, and Main Street runs east and west parallel to the mainline track. Going in a southernly direction, Sixth Street first crosses Main Street, then the spur track and, finally, after several feet, crosses the mainline track. Both the northbound and southbound approaches to the tracks are protected by crossing gates with flashing lights. A section of the spur track runs diagonally through Main Street and continues through the Sixth Street Crossing until the spur track reaches the mainline track east of the intersection. The record indicates that CSX Transportation, Inc., owns the mainline track and Vandalia owns a section of the spur track.

¶ 8    According to plaintiff's second amended complaint, the Sixth Street Crossing has several layers of asphalt patches that create a "steep incline or hump." Due to distance and the differences in road surface and elevation, the mainline track is less visible to southbound traffic. As a result, when approaching the spur track, a southbound motorist may not recognize that the mainline track is located within the same crossing. The complaint alleged that Vandalia was aware that it was the most dangerous crossing in Vandalia's city limits.

¶ 9    The second amended complaint also provides an alleged description of the events leading to the underlying collision, which are summarized as follows. On the rainy night of October 30, 2014, Crystal Anna drove four of her children, Alyssa Sewell, A.W., Dr. W., and Dy. W., from Greenville, Illinois, to Vandalia for the Halloween parade. At 6:49 p.m., Crystal Anna was approaching the Sixth Street Crossing on Sixth Street following a line of traffic to the parade area. As she was crossing the spur track, the flow of traffic suddenly stopped, the flashing lights activated, and the gates closed. Crystal Anna, unaware of an approaching train on the mainline track, made a hurried attempt to drive her vehicle forward away from the spur

track. However, she drove her vehicle onto the mainline track and was struck by an eastbound freight train traveling approximately 46 miles per hour. The train collided with the passenger side of Crystal Anna's vehicle, instantly killing Alyssa Sewell, A.W., and Dr. W. Crystal Anna and Dy. W., both seriously injured, were transported to local hospitals where Crystal Anna died, leaving Dy. W. as the sole survivor of the collision.

¶ 10    The second amended complaint contains multiple negligence counts against Vandalia; the Vandalia Lions Club; CSX Transportation, Inc., and its parent company, CSX Corporation (collectively CSX); the Estate of Crystal Anna; Pioneer Railcorp, Inc.; Vandalia Railroad Company, a subsidiary of Pioneer Railcorp, Inc.; Pioneer Railroad Services, Inc.; and the Vandalia Civic Advancement Association, Inc. (Vandalia Civic Advancement Association). As a general liability claim, plaintiff alleged that all defendants had a duty to exercise reasonable care "to avoid injuring or killing members of the public." Plaintiff also specifically alleged in counts II, III, IV, V, and X that Vandalia, as a railroad defendant,[2] had breached various statutory duties and proximately caused the deaths of Alyssa Sewell, A.W., Dr. W., and Crystal Anna and the serious injuries Dy. W. suffered. Additionally, in count VIII, plaintiff specifically alleged that Vandalia, as a municipal corporation, performed or failed to perform, through its employees and agents, negligent acts where it:

"a) created and allowed a temporary unsafe condition to exist on its property in the form of traffic congestion at or around the subject crossing; b) failed to notify CSX regarding the plans for the Halloween Parade; c) failed to prepare a master list of key contacts including railroad officials; d) failed to have a written safety plan and emergency response plan including notification of railroad and other entities; e) failed to develop and communicate a congestion management plan; f) failed to involve the Illinois Department of Transportation or Illinois Commerce Commission in planning of the Halloween Parade or notify them of the parade; g) failed to identify one person in charge of the parade and planning of the parade; h) failed to properly arrange for the safe movement of traffic around the parade; i) failed to have a written plan for the parade; j) failed to have an event planning office; k) failed to have a written plan at any level for the parade; and l) preceded [sic] with the parade planning when it knew or should have known the railroad should be or should have been contacted."

Plaintiff alleged that "these actions or inactions" breached Vandalia's duties and proximately caused the deaths of Alyssa Sewell, A.W., and Dr. W. and the serious injuries Dy. W. suffered. Lastly, in count IX, plaintiff claimed that Vandalia's actions, as alleged in all of the previous counts, constituted willful and wanton conduct, "thereby subjecting [Vandalia] to liability."

¶ 11    On April 7, 2016, Vandalia filed a motion to dismiss the second amended complaint, along with supporting memorandum. Vandalia did not designate whether its motion was pursuant to section 2-615 and/or section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)). Vandalia asserted that it was immune from liability under various provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101, 2-103, 2-104, 2-105, 2-201, 3-104, 4-102 (West 2016)) and that "there is no legal duty owed by [Vandalia] to take any of the actions alleged by plaintiff." Vandalia also asserted that it had "no obligation to prevent a violation of the law" and that Crystal Anna

---

[2]The railroad defendants are identified in the second amended complaint as CSX, Vandalia, and the Vandalia Civic Advancement Association.

violated the law by driving into the railroad crossing and stopping on the tracks before she could safely cross the tracks. Lastly, Vandalia asserted that plaintiff's claims, specifically regarding the conditions of the railroad crossing, signal lights, and crossing gates, were barred under Illinois law because the Illinois Commerce Commission (ICC) had exclusive jurisdiction over "railroad crossing protection," safety and regulation of railroad grade crossing.

¶ 12 On December 9, 2016, plaintiff filed a memorandum in opposition to Vandalia's motion to dismiss, and he attached several exhibits in support. The exhibits included a copy of the August 4, 2014, resolution; a video deposition of Vandalia's police chief Jeffrey Ray, who testified that the Sixth Street Crossing was the most dangerous crossing in Vandalia; an affidavit of Brian Avery, an expert on risk and safety management; and materials related to the management of special events.

¶ 13 Plaintiff first asserted that Vandalia, in filing a motion to dismiss under section 2-615 and/or section 2-619, admitted all well-pled facts in the second amended complaint. Plaintiff argued that the well-pled facts included the following: (1) Vandalia was aware that the Sixth Street Crossing was the most dangerous railroad crossing in Vandalia; (2) Vandalia knew that traffic would be congested and that "street closures would funnel more traffic through that [Sixth Street and Main Street] intersection"; (3) Vandalia was told by a member of the public to notify CSX that the Sixth Street Crossing would be more congested the evening of the parade; (4) Vandalia owned, operated, and maintained the spur track that ran diagonally through the Sixth Street Crossing; and (5) Vandalia failed to move the railroad gates or take remedial action to provide for the safe operation of trains after it discontinued use of the spur track.

¶ 14 Based on these claimed facts, plaintiff contended that Vandalia had assumed a common law duty of reasonable care to plaintiff by participating in the planning of the parade, which included adopting a resolution "delineating its part in assuming the duty." Plaintiff also argued that Vandalia was not entitled to immunity under the Act because Vandalia's (1) negligent execution of its resolution to issue the parade permit was not protected and (2) acts were not commonly recognized as part of police services performed pursuant to an enactment or involved a failure to enforce a law. Plaintiff further asserted that Vandalia had failed to meet its burden in proving that the allegations contained in the complaint were applicable to any of the Act's immunity provisions.

¶ 15 In support of Vandalia's request for the Illinois Department of Transportation to temporarily close portions of the state highway for the parade, the adopted resolution from August 2014 identified a designated detour route through Vandalia following the proposed temporary state highway closures. The resolution also stated, in pertinent part, the following:

"BE IT FURTHER RESOLVED, that the City of Vandalia assumes full responsibility for the direction, protection, and regulation of the traffic during the time the closure is in effect.

BE IT FURTHER RESOLVED, that Police Officers or authorized flaggers shall at the expense of the City of Vandalia be positioned at each end of the closed section and at other points (such as intersections) as may be necessary to assist in directing traffic through the detour."

¶ 16 After hearing argument on the motion to dismiss on February 10, 2017, and taking the matter under advisement, the circuit court entered an order on February 28, 2017, denying the

motion to dismiss.[3] The court, citing *Dockery v. Village of Steeleville*, 200 Ill. App. 3d 926 (1990), determined that section 4-102 of the Act (745 ILCS 10/4-102 (West 2016)) did not grant Vandalia immunity because the second amended complaint alleged that Vandalia had committed some affirmative acts, which included "directing plaintiff to an unsafe area to watch the parade." The court made no other additional findings related to the motion to dismiss.

¶ 17  On March 16, 2017, Vandalia filed a motion to clarify or, in the alternative, reconsider the circuit court's February 28, 2017, order denying its motion to dismiss. Vandalia requested that the court address its other arguments raised in the motion to dismiss, including alternative immunity provisions and that Vandalia did not owe a duty. Vandalia further requested that the court, if it refused to modify its order, certify two questions pursuant to Illinois Supreme Court Rule 308 (eff. July 1, 2017). In response, plaintiff argued that the court did not have a duty to expand upon its ruling because the evidence supporting the motion to dismiss was insufficient and that the certified questions were inappropriate "where there is no substantial ground for difference of opinion."

¶ 18  Following additional proceedings, the circuit court held a telephone conference with the parties on October 2, 2017. Shortly thereafter, the court entered an interlocutory order pursuant to Rule 308, certifying two questions (*supra* ¶ 1) for appellate consideration.

¶ 19  On December 4, 2017, this court denied Vandalia's petition for leave to appeal pursuant to Rule 308. Vandalia then filed a petition for leave to appeal to the Illinois Supreme Court. The supreme court denied Vandalia's petition but entered a supervisory order directing this court to vacate its denial order, allow the application for leave to appeal, and address the two certified questions. In accordance with the supreme court's direction, we now issue this opinion addressing the two certified questions.

¶ 20                                    II. ANALYSIS

¶ 21  Our review of this interlocutory appeal brought under Illinois Supreme Court Rule 308 (eff. July 1, 2017) is strictly limited to the two certified questions on appeal (*Benton v. City of Granite City*, 2016 IL App (5th) 150241, ¶ 8), and the propriety of any particular circuit court order is not reviewed under Rule 308 (*Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 987 (2008)). However, a reviewing court may go beyond the scope of a certified question and consider the appropriateness of the order giving rise to the appeal in the interests of judicial economy and when the need to reach an equitable result so requires. *Combs v. Schmidt*, 2015 IL App (2d) 131053, ¶ 8. Moreover, "[a]lthough the scope of our review is generally limited to the questions that are certified by the circuit court, if the questions so certified require limitation in order to materially advance the ultimate termination of the litigation, such limitation is proper." *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶ 11.

¶ 22  When ruling on a motion to dismiss under either section 2-615 or 2-619, which can be raised simultaneously under the Code (735 ILCS 5/2-619.1 (West 2016)), it is proper for a circuit court to accept as true all well-pled facts in the complaint and draw all reasonable inferences from those facts in favor of the nonmoving party. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). However, a motion to dismiss does not admit conclusions of law or unsupported factual allegations. *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 566 (1989). In answering the certified questions, we assume that the

---

[3]The common law record on appeal does not contain a transcript of the proceedings.

undisputed factual statements and allegations of both parties are true and accurate. *Ray v. Beussink & Hickam, P.C.*, 2018 IL App (5th) 170274, ¶ 40.

¶ 23 When a defendant files a motion to dismiss pursuant to section 2-619, the defendant admits the legal sufficiency of the complaint but asserts some affirmative matter that may defeat the claim. *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267 (2010) (a claim filed after the applicable statute of limitations expired is an example of an affirmative matter that can defeat a plaintiff's claim); see also *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003) (immunity granted by the Act is an affirmative matter properly raised in a section 2-619 motion to dismiss). Unlike a filing under section 2-615, which is based on defects in the pleading that render it insufficient in law (735 ILCS 5/2-615 (West 2016)), in a ruling on a section 2-619 motion, the circuit court considers the pleadings, depositions, and affidavits. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 296 (1997). When a court rules on a section 2-619 motion to dismiss, it " 'must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.' " *Van Meter*, 207 Ill. 2d at 367-68 (quoting *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997)). This court's review of a dismissal under either section 2-615 or 2-619 is *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 24 To succeed in an action for negligence, a plaintiff must establish that a defendant owed a duty of care to plaintiff, defendant breached that duty, and plaintiff's resulting injury was proximately caused by the breach. *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 483 (2002). Absent a legal duty of care owed to plaintiff, the defendant cannot be found negligent. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999) (unless a duty is owed, there is no negligence and a plaintiff cannot recover "as a matter of law"). Once a duty has been established, unless an immunity provision applies, a local public entity is liable in tort to the same extent as a private party. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996).

¶ 25 The Act protects "local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a) (West 2016). The immunities established in the Act are affirmative matters, and so governmental entities bear the burden of proving their immunity under the Act. *Van Meter*, 207 Ill. 2d at 370. The Illinois Supreme Court has indicated that the " 'logical sequence' " is for courts to determine the existence of a duty prior to considering the affirmative defense of statutory immunity under the Act. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 55. Therefore, we address the certified questions in that order. Moreover, because plaintiff divided the claims against Vandalia into two categories—municipal defendant and railroad defendant—we find it necessary to consider the first certified question (immunity) relative to these distinctions.

¶ 26 ### A. Second Certified Question (Duty)

¶ 27 On appeal, plaintiff alleges that Vandalia had a duty to maintain its property, including the Sixth Street Crossing, pursuant to section 3-102 of the Act (745 ILCS 10/3-102 (West 2016)). Plaintiff further alleges that Vandalia owed a duty of reasonable care to those attending the parade, "in part, as a railroad owner and the incident giving rise to this litigation occurred on land which is owned by, and under the control of Vandalia at the time of the collision." Lastly, plaintiff alleges that Vandalia owed a duty to those attending the parade "once it voluntarily undertook the responsibility and became actively involved in the planning, organization and

carrying out of the parade" and in adopting the National Incident Management Systems (NIMS) and in training its employees to follow NIMS procedures.

¶ 28 Conversely, Vandalia asserts that it does not own the railroad or a section of the spur track within the Sixth Street Crossing. Even assuming ownership, Vandalia argues that plaintiff's claims are barred under Illinois law because the ICC has exclusive jurisdiction over "railroad crossing protection," safety, and regulation of railroad grade crossing. Lastly, Vandalia argues that plaintiff's allegation that it had a "voluntary undertaking of duty" was, first, not mentioned in the second amended complaint and, second, devoid of any well-pled facts. We agree with plaintiff that Vandalia, as the alleged property owner, had a duty to maintain the Sixth Street Crossing in order to allow for safe crossing by the public.

¶ 29 "In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. "Whether a duty exists is a question of law for the court to decide." *Id.* ¶ 13. It is well settled that section 3-102(a) codifies the common law duty of a local public entity to maintain its property in a reasonably safe condition. See *id.* ¶ 15; *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78 (1995); *Wagner v. City of Chicago*, 166 Ill. 2d 144, 150 (1995); *West v. Kirkham*, 147 Ill. 2d 1, 14 (1992); *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 412-15 (1991). Section 3-102(a) of the Act provides as follows:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2016).

¶ 30 Here, it is undisputed that Crystal Anna and the occupants of her vehicle were permitted and intended users of the Sixth Street Crossing while attempting to attend the parade. See *Washington*, 188 Ill. 2d at 240 ("[F]or a public entity to owe a duty to protect a party from unreasonably dangerous conditions existing on its property, that party must be both a permitted and an intended user of the property."). Moreover, according to the well-pled facts, Vandalia had notice of the dangerous railroad track and street configuration at the Sixth Street Crossing, which was "objectively obvious." While it is true that Vandalia may ultimately succeed that it did not own the railroad and spur track at the Sixth Street Crossing, this court must accept on review that Vandalia had ownership interests, as alleged in the complaint, in answering the two certified questions.

¶ 31 Vandalia also maintains that it did not have a duty to maintain the safety of the Sixth Street Crossing because the safety of railroad crossings was within the ICC's exclusive jurisdiction. Specifically, Vandalia asserts that it is undisputed that the ICC had approved the configuration of the Sixth Street Crossing in 1984. The facts necessary to sustain Vandalia's alternative defense, however, are not apparent on the face of the complaint and were not supported by affidavit or other evidentiary materials of record. Here, the second amended complaint alleges only that the ICC approved the removal of one track and the extension of the spur track. Likewise, nothing in the record firmly establishes that the ICC had previously approved the

configuration, and the circuit court made no such factual determination. Thus, the record is insufficient for this court to find, as a matter of law, that the ICC had exclusive jurisdiction over the safety of the Sixth Street Crossing.

¶ 32    Based on the foregoing, we find that Vandalia, as the alleged property owner, had a codified duty to ensure that the Sixth Street Crossing was safe for the public, which included Crystal Anna and the occupants of her vehicle. Accordingly, the second certified question (duty) is answered in the affirmative.

¶ 33                    B. First Certified Question (Immunity)
¶ 34                            1. *Railroad Defendant*
¶ 35    Illinois courts have held that a defendant municipality may act in a dual capacity, one proprietary and the other governmental. See *Jones v. Village of Willow Springs*, 240 Ill. App. 3d 235, 240 (1992). A municipality when acting in its governmental capacity may be immunized under the Act (745 ILCS 10/1-101 *et seq.* (West 2016)) but not when acting in its proprietary capacity for its own corporate benefit. *Jones*, 240 Ill. App. 3d at 239. Where the municipality acts to accomplish a private purpose for its own corporate benefit, it is acting in its proprietary capacity. *Id.* Thus, in determining the applicability of the immunity provisions under the Act, we must first ascertain whether Vandalia was acting in a governmental or a proprietary capacity.

¶ 36    If the ultimate disposition of a certified question is not strictly legal and includes factual issues relevant to the legal question, the court should refrain from answering the certified question. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21 (citing *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 32). Likewise, "[c]ertified questions must not seek an application of law to the facts of a specific case." *Id.* (citing *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 557 (2009)). Rather, certified questions must involve a question of law for which there is substantial ground for difference of opinion and for which an immediate appeal from the interlocutory order may materially advance the ultimate termination of the litigation. See Ill. S. Ct. R. 308(a) (eff. July 1, 2017); see also *Rozsavolgyi*, 2017 IL 121048, ¶ 31.

¶ 37    In light of these controlling principles, we are unable to answer the first certified question (immunity) regarding the applicability of the Act to Vandalia as an alleged railroad defendant. Specifically, the second amended complaint contains no well-pled factual allegations regarding whether Vandalia was acting in a proprietary or governmental capacity, and the circuit court made no such finding prior to denying Vandalia's motion to dismiss. Nevertheless, we will address the first certified question (immunity), in part, limited to Vandalia as a municipal defendant.

¶ 38                            2. *Municipal Defendant*
¶ 39    Even though we cannot answer the first certified question (immunity) as it relates to Vandalia as a railroad defendant, we believe addressing this question, but limiting our answer to the specified claims against Vandalia as a municipal defendant (*i.e.*, counts VIII and IX), will materially advance the ultimate termination of the litigation. See *Crawford County Oil, LLC*, 2014 IL App (5th) 130382, ¶ 11 ("Although the scope of our review is generally limited to the questions that are certified by the circuit court, if the questions so certified require

limitation in order to materially advance the ultimate termination of the litigation, such limitation is proper.").

¶ 40    Because the Illinois Constitution of 1970 abolished sovereign immunity in Illinois, except as the General Assembly may provide by law, the Act governs what circumstances local government units are immune from civil liability. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 340 (1998). In construing the Act, we will not depart from the plain language by reading into exceptions, limitations, or conditions that conflict with the express legislative intent. *Id.* Because section 4-102 of the Act (745 ILCS 10/4-102 (West 2016)) provides for blanket immunity to local public entities under certain circumstances, we consider the applicability of this section. Section 4-102 of the Act states:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee." *Id.*

Under the Act, a " '[l]ocal public entity' " includes all local governmental bodies, including municipalities and municipal corporations. *Id.* § 1-206.

¶ 41    Section 4-102 of the Act incorporates, as an immunity, the separate common law "public duty rule" that municipalities or their employees are not liable for failure to supply police or fire protection service. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 508-09 (2006) ("This court's comments in [*Aikens v. Morris*, 145 Ill. 2d 273 (1991),] suggest *** that the public duty rule, at least in this context, has been incorporated into [the Act] as an 'immunity.' "); see also *Aikens v. Morris*, 145 Ill. 2d 273, 278 n.1 (1991) ("Under the rule, a police department's duty to preserve the well-being of the community is owed to the public at large, rather than specific individuals.").

¶ 42    Notably, however, the judicially created special duty doctrine was an exception to the public duty rule that applied in certain limited instances where a governmental entity had assumed a special relationship to an individual "so as to elevate that person's status to something more than just being a member of the public." *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003 (1987). In order for a special duty to arise, as compared to a duty owed to the general public, the following requirements must be present:

> " '(1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either *affirmative* or wilful in nature; and (4) the injury must occur while the plaintiff is under the *direct and immediate control* of employees or agents of the municipality.' " (Emphases added, omitted, and in original.) *Id.* (quoting *Curtis v. County of Cook*, 109 Ill. App. 3d 400, 407 (1982)).

¶ 43    In the case *sub judice*, plaintiff contends that our decision in *Dockery*, 200 Ill. App. 3d 926, is dispositive of this issue. Plaintiff argues that the *Dockery* decision carved out an exception to section 4-102 of the Act for "affirmative acts." In response, Vandalia argues that section 4-102 of the Act does not contain any such exception. We agree with Vandalia.

¶ 44    *Dockery* involved a plaintiff who was struck in the face by an aerial bomb while attending a fireworks display in Steeleville, Illinois. *Id.* at 927. The plaintiff claimed that the Village of Steeleville (Village) negligently failed to keep spectators at " 'a safe and proper distance from the site where the fireworks were being discharged.' " *Id.* at 927-28. The plaintiff argued that the Village voluntarily assumed crowd control and traffic management at an event held by a private entity; thus, there was no immunity provided under section 4-102 of the Act. *Id.* at 928. This court held that crowd control and traffic management at a Fourth of July celebration constituted " 'police protection or service' " and, consequently, section 4-102 of the Act barred the plaintiff's claim that the Village had provided inadequate police protection by allowing spectators into an unsafe area to watch fireworks. *Id.* at 929. In so ruling, this court stated:

> "Plaintiff's complaint does not allege that the Village committed some *affirmative* act such as *directing* plaintiff to an unsafe area to watch the fireworks display. Instead, the complaint alleges that the Village provided inadequate police protection to its citizens in that it allowed them to watch, or failed to prevent them from watching, the fireworks display from an unsafe area." (Emphases added.) *Id.*

¶ 45    Citing this passage in *Dockery*, plaintiff asserted that Vandalia knew or should have known that street closures would funnel more traffic through the Sixth Street Crossing at the time of the parade. Thus, Vandalia's actions constituted an affirmative act similar to the affirmative act that was notably absent in *Dockery*. Here, after taking the motion to dismiss under advisement, the circuit court found that Vandalia was not provided immunity under section 4-102 of the Act because the second amended complaint alleged that Vandalia committed some affirmative act, "such as directing plaintiff to an unsafe area to watch the parade." We agree with Vandalia that section 4-102 of the Act applies to the acts alleged in count VIII. While we do not find support in the record for the circuit court's factual finding that Vandalia performed some affirmative act, "such as directing plaintiff to an unsafe area," even if we were to assume some affirmative act took place for the sake of argument, the court's reliance on *Dockery* is misplaced.

¶ 46    At the time of our *Dockery* decision, independent of statutory concepts, the general rule was that a municipality or its employees may not be held liable for failure to supply general police protection. See *Huey v. Town of Cicero*, 41 Ill. 2d 361, 363 (1968). However, courts had long recognized a special duty exception to this general rule. *Id.*; *Fessler v. R.E.J., Inc.*, 161 Ill. App. 3d 290, 295 (1987); *Fryman v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 611, 616 (1985); *Santy v. Bresee*, 129 Ill. App. 3d 658, 662 (1984); *Gardner v. Village of Chicago Ridge*, 71 Ill. App. 2d 373, 378-79 (1966), *overruled by Harinek*, 181 Ill. 2d 335. In the past, where a public employee had exercised care or custody over an individual, the individual's status was elevated beyond that of a member of the general public, "the 'special duty' exception [was] activated and the employee [was] liable for injury proximately caused by his negligence." *Anthony v. City of Chicago*, 168 Ill. App. 3d 733, 736 (1988).

¶ 47    In 1998, the special duty exception was eliminated when the Illinois Supreme Court, overruling all previous holdings to the contrary, held that "the special duty doctrine may not operate to impose liability upon a public entity after a court has found that entity immune from liability under [the Act]." *Harinek*, 181 Ill. 2d at 347. Simply put, under *Harinek*, courts were no longer authorized to make judicial exceptions to the Act that would permit the imposition of liability by reading into it exceptions, limitations, or conditions. *Id.* at 340. Moreover,

section 4-102 of the Act neither contains any exception for affirmative acts nor incorporates the judicially created special duty exception.

¶ 48　　In 2016, the Illinois Supreme Court abolished the public duty rule and its special duty exception, observing that the public policy behind the judicially created public duty rule and its special duty exception have largely been supplanted by the legislature's enactment of statutory immunities, thus rendering the public duty rule and its special duty exception obsolete. See *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶¶ 60-61. Shortly thereafter, the Second District Appellate Court, in interpreting section 2-103 of the Act (745 ILCS 10/2-103 (West 2014)), concluded that the abolishment of the judicially created public duty rule did not impact the statutory codification of the rule as an immunity. *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶ 41. Moreover, the *Coleman* decision has been applied retroactively. *Id.*; see also *Tzakis v. Berger Excavating Contractors, Inc.*, 2019 IL App (1st) 170859, ¶ 49 (circuit court's decision to dismiss complaint based on the public duty rule reversed on appeal because *Coleman* should have been applied retroactively).

¶ 49　　Consequently, the Illinois Supreme Court, in effect, abrogated *Dockery*, at least to the degree that it could be inferred that an affirmative act, such as directing a plaintiff to an unsafe area, may create an exception to the grant of immunity under section 4-102 of the Act. See *Harinek*, 181 Ill. 2d at 347; *Coleman*, 2016 IL 117952, ¶¶ 60-61; 745 ILCS 10/4-102 (West 2016). Thus, section 4-102 of the Act does not contain any exception for affirmative acts or incorporate the abolished special duty exception. See 745 ILCS 10/4-102 (West 2016); *Coleman*, 2016 IL 117952, ¶¶ 60-61.

¶ 50　　Based on the foregoing, we hold that Vandalia, as a municipal defendant, is immune from liability from the governmental acts alleged in count VIII, regardless of whether it performed the affirmative acts complained of by plaintiff. Moreover, section 4-102 of the Act does not contain an exception for willful and wanton misconduct. *DeSmet*, 219 Ill. 2d at 514-15. Therefore, given the facts of this case, section 4-102 of the Act immunizes Vandalia against claims of negligence (count VIII) and willful and wanton conduct (count IX) in implementing crowd control and traffic management, a recognized "police protection or service," at its annual Halloween parade.

¶ 51　　In summary, we first answered the second certified question (duty) in the affirmative based on the well-pled facts contained in the second amended complaint, which alleged that Vandalia is a railroad owner and the incident giving rise to this litigation occurred on land owned and controlled by Vandalia at the time of the accident. However, the record is insufficient for this court to address Vandalia's alternative assertion that the ICC had exclusive jurisdiction regarding the safety of the Sixth Street Crossing. As such, the first certified question (immunity) is answered in the affirmative but limited to the claims against Vandalia acting in its municipal capacity. As such, we reverse the circuit court's order denying Vandalia's motion to dismiss, in part, and remand with directions for the court to dismiss counts VIII and IX.

¶ 52　　　　　　　　　　　　　III. CONCLUSION

¶ 53　　For the foregoing reasons, we answer the second certified question (duty) in the affirmative, as it relates to Vandalia as a railroad defendant, based on the well-pled facts contained in the second amended complaint. Additionally, we answer the first certified question (immunity) in the affirmative but limited our answer to Vandalia acting in its municipal capacity, as alleged in counts VIII and IX. Accordingly, the circuit court's February

28, 2017, order denying Vandalia's motion to dismiss is reversed, in part, and we remand with directions for the circuit court to dismiss counts VIII and IX.

¶ 54   Affirmed in part and reversed in part; cause remanded with directions.

¶ 55   Certified questions answered.