**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230035-U

Order filed October 4, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| MARCELA ANDRADE, as Independent Administrator of the Estate of VICTOR ANDRADE, deceased, and MIGUEL ANDRADE, and ADRIANNA GLASS, as Independent Administrator of the Estate of ANDRE GLASS, deceased, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellants, | ) ) | |
| v. | ) ) ) | Appeal No. 3-23-0035 Circuit No. 22-LA-58 |
| CITY OF KANKAKEE, A Municipal Corporation, and Unknown City of Kankakee Police Officers, Individually and as Agents of CITY OF KANKAKEE, and the KANKAKEE COUNTY SHERIFF, and Unknown Kankakee County Sheriff Officers, Individually and as Agents of KANKAKEE COUNTY SHERIFF, | ) ) ) ) ) ) ) ) ) ) | Honorable Lindsay A. Parkhurst, Judge, Presiding. |
| Defendant-Appellees. | ) | |

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

¶ 1     *Held*: The trial court did not err in dismissing plaintiffs' complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure, given that section 4-102 absolute immunity under the Tort Immunity Act applied to the allegations. The trial court did not abuse its discretion in denying leave to amend the complaint where plaintiffs did not propose amendments that would cure the defect in the pleadings. Affirmed.

¶ 2     Plaintiffs-Appellants, Victor Andrade, Miguel Andrade, and Andre Glass (with Victor and Andre being represented by the administrators of their estates), were victims of a shooting that occurred in close proximity to the Kankakee County courthouse. They filed a four-count complaint against defendants-appellees, the City of Kankakee (and its police officers, individually and as agents) and the Kankakee County Sheriff (and its sheriff officers, individually and as agents), claiming: (1) wrongful death (willful and wanton conduct) as to Victor; (2) negligent infliction of emotional distress (willful and wanton conduct) as to Miguel; (3) negligence (willful and wanton conduct) as to Andre; and (4) negligent infliction of emotional distress (willful and wanton conduct) as to Andre. Defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code). 735 ILCS 5/2-619.1 (West 2020). The trial court dismissed the complaint with prejudice pursuant to section 2-619(a)(9) (pertaining to other affirmative matters defeating a plaintiff's claim), because it determined that section 4-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) conferred defendants with absolute immunity from plaintiffs' claims. 735 ILCS 5/2-619(a)(9) (West 2020); 745 ILCS 10/4-102 (West 2020) (conferring absolute immunity for the failure to provide adequate police protection or service). Plaintiffs appeal the section 2-619(a)(9) dismissal. In the alternative, plaintiffs argue that the trial court should have granted their first request for leave to amend their complaint to plead facts that would implicate section 2-202 qualified immunity. 745 ILCS 10/2-202 (West 2020) (assigning liability to willful and wanton acts or

omissions in the execution or enforcement of any law). For the reasons that follow, we affirm the dismissal with prejudice.

¶ 3                                    I. BACKGROUND

¶ 4        The August 26, 2022, complaint filed by plaintiffs alleged the following. On August 25 or August 26, 2021, plaintiffs notified one or more Kankakee police officers of "a specific threatened homicide" that would take place August 26, 2021, at the courthouse in retaliation for Victor's upcoming court appearance. A Kankakee police officer met with Victor and discussed the threatened homicide, as well as an open homicide case. The Kankakee police officer "communicated information regarding these specific threats to other local authorities[.]" On August 26, 2021, immediately following his court appearance, Victor was "ambushed, shot multiple times, and killed" at or near Merchant Street and Harrison Avenue in Kankakee. Victor's cousin Miguel, who was mere feet away from Victor, was shot and wounded. Andre was also leaving the courthouse at the time of the shooting and was also shot and wounded.

¶ 5        Plaintiffs alleged as to each of the four counts set forth above that defendants breached their duty to refrain from engaging in willful and wanton conduct while plaintiffs and the location of the shooting were under their control in that defendants: (1) failed to take any measures to prevent the shooting when it knew (or should have known) when and where the shooting was likely to occur, as well as the identity of the shooter and the intended target (subparagraphs (a) through (e))[1]; (2) failed to place plaintiffs, members of the public attending court, and the courthouse under additional protection or surveillance given the threat (subparagraphs (f) and (g)); (3) failed to contact the requisite authorities to move or cancel plaintiffs' and other persons'

_____

[1] Though not entirely clear from the complaint, it is strongly implied that Victor and possibly Miguel were the intended targets.

3

mandatory court appearance given the threat (subparagraph (h)); and (4) were otherwise willful and wanton in their actions toward preventing a threatened homicide and "enforcing the criminal code in general" after creating a special relationship with plaintiffs (subparagraphs (i) and (j)).

¶ 6 On October 24, 2022, defendants filed a section 2-619.1 combined motion to dismiss. 735 ILCS 5/2-619.1 (West 2020). As to section 2-615, which challenges the legal sufficiency of the complaint, defendants argued that the allegations in the complaint were conclusory. 735 ILCS 5/2-615 (West 2020). Further, what facts were pled—that the shooting occurred at the intersection of Merchant Street and Harrison Avenue—undermined the allegation of control over plaintiffs (and therefore proximate cause as to plaintiffs' injuries) as that location is outside the courthouse.

¶ 7 As to section 2-619(a)(9), which admits the legal sufficiency of the claim but asserts an affirmative defense or other matter to defeat the claim, defendants argued that section 4-102 of the Tort Immunity Act barred plaintiffs' claims. 735 ILCS 5/2-619(a)(9) (West 2020); 745 ILCS 10/4-102 (West 2020). Defendants noted that section 4-102 provides absolute immunity in situations where no police protection is provided or where inadequate police protection is provided. 745 ILCS 10/4-102 (West 2020); *Schultz v. St. Clair County*, 2022 IL 126856, ¶¶ 21-22. There are no exceptions for willful and wanton conduct (*DeSmet ex rel. Estate of Hays v. County of Rock Island*, 219 Ill. 2d 497, 515 (2006)), nor is there a special duty exception. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶¶ 60-61; *Wisnasky v. CSX Transportation, Inc.*, 2020 IL App (5th) 170418, ¶ 49. Defendants contended that plaintiffs' own complaint makes clear that the basis of their lawsuit is that defendants "did not take any measures to prevent the shooting," a claim which falls squarely within section 4-102.

¶ 8 On November 29, 2022, plaintiffs responded to the motion to dismiss. As to section 2-615, plaintiffs argued that they had pled facts sufficient to establish that section 2-202 of the Tort

Immunity Act, not section 4-102, applied. Section 2-202 allows for liability for acts or omissions in the execution or enforcement of a law, provided such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202 (West 2020). Plaintiffs noted that the complaint generally alleged that co-defendant the City of Kankakee (and its police) were executing the law at all times relevant—the police met with Victor prior to the shooting to discuss the threat and open homicide case, and, at the time of the shooting, the police were investigating the same and were trying to locate the shooter. The complaint also generally alleged that co-defendant the Kankakee Sheriff (and its officers) were executing the law at all times relevant—the Sheriff's personnel were involved in maintaining courthouse security at the time of the shooting. 55 ILCS 5/3-6023 (West 2020) (Each sheriff shall *** maintain the security of the courthouse.) According to plaintiffs, a reasonable fact finder could understand these allegations to mean the use of x-ray machines, metal detectors, one-way entrance/exits, and banning weapons. From this, a fact finder could further find that it was more likely true than not that the Sheriff was both executing the law and had "a degree of control" over the adjacent lawn at the time of the shooting. In the event that these facts were insufficient to establish a cause of action for wrongful death, negligent infliction of emotional distress, and negligence (willful and wanton conduct) and to implicate section 2-202 qualified immunity, plaintiffs sought leave to amend.

¶ 9        As to section 2-619(a)(9), plaintiffs argued that section 4-102 did not apply to defeat their claim, because, for the reasons previously argued, section 2-202 applied to the facts pled.

¶ 10        On December 9, 2022, defendants replied. As to section 2-615, defendants argued again that the complaint's allegations were conclusory. As to section 2-619, defendants argued that, even if the allegations in the complaint were "well pled and true, they point to nothing more than the inadequacy of police protection or service provided to Victor, Miguel, and Andre." Defendants

5

continued that allegations of inadequate police protection plainly invoked section 4-102 of the Tort Immunity Act, and no amount of creative pleading could make the case about anything else.

¶ 11      On December 19, 2022, the trial court granted defendants' motion to dismiss pursuant to section 2-619(a)(9). It explained that, even if it accepted the facts as well-pled as opposed to conclusory, those facts fit squarely within a section 4-102 framework, conferring absolute immunity to defendants. The trial court denied leave to amend the complaint. The court explained that it gave plaintiffs the "benefit of the doubt" that they had adequately pled the elements of their claims, such as duty and willful and wanton conduct. However, it continued, plaintiffs maintained that defendants' protection was absent or inadequate and, in so doing, plaintiffs continued to invoke defendants' section 4-102 absolute immunity. Therefore, no amendment could bring the allegations outside the scope of section 4-102. This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13      Plaintiffs appeal the trial court's dismissal of their original complaint with prejudice. Initially, we consider whether the trial court correctly dismissed the original complaint pursuant to section 2-619(a)(9) of the Code because section 4-102 of the Tort Immunity Act provided defendants with absolute immunity against plaintiffs' claims. Determining that it did, we next consider the gravamen of plaintiffs' appeal, whether the trial court abused its discretion in denying plaintiffs leave to amend the complaint to plead facts sufficient implicate section 2-202 qualified immunity as opposed to section 4-102 absolute immunity.

¶ 14                A. Section 619(a)(9) Dismissal Due to Section 4-102 Absolute Immunity

¶ 15      Under section 2-619(a)(9) of the Code, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or "other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020); *Van Meter v. Darien Park*

*District*, 207 Ill. 2d 359, 367 (2003).  An affirmative matter in the context of a section 2-619(a)(9) motion is something in the nature of a defense that negates the cause of action completely.  *Id.* at 367.  "Immunity under the [Tort Immunity] Act is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss."  *Id.*  When the trial court rules on a section 2-619(a)(9) motion to dismiss, it must consider the pleadings and supporting documents in a light most favorable to the non-movant.  *Id.* at 367-68.  Section 2-619(a)(9) dismissals are reviewed *de novo*.  *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 359 (2009).

¶ 16  The Tort Immunity Act protects local public entities and public employees from liability arising from the operation of government.  *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001).  Immunity safeguards public funds for their intended purposes, rather than the payment of certain damages.  *Id.*  Section 4-102 provides that a public entity or public employee enjoys absolute immunity for a failure to provide police protection or a failure to prevent the commission of a crime:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals.  This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee."  745 ILCS 10/4-102 (West 2020).

¶ 17  Section 4-102 does not contain any exceptions and absolutely immunizes local public entities and their employees for both negligent and willful and wanton conduct in failing to protect or in providing inadequate police protection services.  *DeSmet*, 219 Ill. 2d at 515.  Further, section

7

4-102 is broad in its scope and has been applied in a wide range of circumstances. See, *e.g.*, *Lacey*, 232 Ill. 2d at 368 (section 4-102 absolute immunity applied to a claim that police failed to protect a woman experiencing domestic abuse who was later murdered by her abuser); *Wisnasky*, 2020 IL App (5th) 170418, ¶ 50 (section 4-102 absolute immunity applied to the claim brought by estate of a family killed at a railroad crossing that the municipality provided inadequate crowd control and traffic management); *Wright-Young v. Chicago State University*, 2019 IL App (1st) 181073, ¶ 65 (section 4-102 absolute immunity applied to allegations that the school board failed to implement appropriate security in light of increased gang violence); *Albert v. Board of Education of City of Chicago*, 2014 IL App (1st) 123544, ¶ 55 (section 4-102 absolute immunity applied to alleged omissions of the school board to prevent a fight amongst students that occurred on the way home from school); *Prough v. Madison County*, 2013 IL App (5th) 110146, ¶ 26 (section 4-102 absolute immunity applied to a claim that the sheriff's department released a man in custody and the man subsequently murdered his father); *Fender v. Town of Cicero*, 347 Ill. App. 3d 46, 53 (2004) (section 4-102 absolute immunity applied to a claim that the defendants failed to rescue victims of a residential fire).

¶ 18     We find *Wright-Young* instructive because, as here, it involves a public entity's alleged failure to perform a police protection service given a known risk or threat of increased violence. In *Wright-Young*, the plaintiff brought a wrongful death action against, *inter alia*, the board of education, when her 17-year-old son was shot at a high school basketball game. *Wright-Young*, 2019 IL App (1st) 181073, ¶ 1. The complaint alleged that the board was aware of increased violence at other recent sporting events. *Id.* ¶ 6. It continued that the board failed to " 'implement an appropriate security plan for the safety of the students given the elevated risks for violence at the event,' to 'assign or maintain posts within the arena,' to 'keep entrances and exits clear of

crowds during and immediately after the game,' to prevent fans from 'engag[ing] in multiple fights inside the arena and outside [its] entrances,' and to 'prevent fans from exiting the arena in a disorderly manner.' " *Id.* ¶ 64. The appellate court determined that these allegations describe police protection services, for which section 4-102 absolute immunity applies. *Id.* ¶ 65.

¶ 19  Here, plaintiffs' claims are similar to those pled in *Wright-Young*. The plaintiffs in *Wright-Young* alleged that the public entity knew that the likelihood of violence on the day in question was high yet did not take adequate measures to prevent the ensuing harm. Similarly, the instant plaintiffs alleged that defendants failed to take any measures to prevent the shooting when they knew (or should have known) when and where the shooting was likely to occur, as well as the identity of the shooter and the intended target, "failed to place plaintiffs, members of the public attending court, and the courthouse under additional protection or surveillance given the threat," and failed to "prevent a threatened homicide." Indeed, the allegations contained in subparagraphs (a) through (j) use the express terms "failure to prevent" and "failure to protect" no less than eight times. As in *Wright-Young* these allegations plainly describe police protection services, for which section 4-102 absolute immunity applies. As such, the existing complaint cannot survive a section 2-619(a)(9) motion to dismiss.

¶ 20  B. Request to Amend to Plead Facts Sufficient to Implicate

Section 2-202 Qualified Immunity

¶ 21  We next consider whether the trial court abused its discretion in denying plaintiffs leave to amend the existing complaint. In Illinois, trial courts are encouraged to freely and liberally allow the amendment of pleadings so that a litigant can completely present its cause of action. *Senese v. Climatemp*, Inc., 222 Ill. App. 3d 302, 320 (1991). "The decision to deny a request to amend is a matter within the sound discretion of the trial court." *Id.* The court should consider: (1) whether

9

the proposed amendment would cure the defect in the pleading; (2) whether other parties would be prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether the party seeking to amend had other opportunities to do so. *Winfrey v. Chicago Park District*, 274 Ill. App. 3d 939, 947 (1995). "Before a trial judge can be found to have abused his discretion in denying a party leave to amend, it must be clear from the record that sufficient reasons or facts were presented to the trial judge and that his exercise of discretion is clearly contrary to the facts." *Senese,* 222 Ill. App. 3d at 321.

¶ 22    Here, in denying leave to amend, the trial court was required to balance competing principles. On the one hand, Illinois encourages the liberal amendment of pleadings, this was plaintiffs' first request, and there would likely be little prejudice or surprise given the request was made before discovery had begun. On the other hand, plaintiffs never made clear before the trial court what facts, exactly, they would plead to cure the defect in the pleading. To the contrary, they argued before the trial court in a manner that reinforced the court's determination that plaintiffs would continue to proffer facts that called for an application of section 4-102 absolute immunity:

> "[T]he police were executing the law at the time of the shooting; specifically, for searching for their suspect and/or the shooter who they were told where and when he would be, [and] they were willful and wanton because they did not correctly stop this person from the shooting."

In this statement, plaintiffs perfunctorily reference the execution of the law yet substantively set forth facts involving the failure to prevent a crime and plainly implicate section 4-102 absolute immunity.

¶ 23    Plaintiffs did not file a motion to reconsider with the trial court, attaching a proposed amended complaint alleging facts to implicate section 2-202. Plaintiffs acknowledged at oral

10

argument on appeal that attaching a proposed amended complaint to a motion to reconsider would have been an appropriate procedure, but explained that they had instead discussed the nature of the proposed amendments with the trial court at the hearing. The record, however, discloses only the perfunctory references indicated *supra* ¶ 22. Nor do plaintiffs' briefs on appeal set forth proposed facts implicating section 2-202. When asked at oral argument what new facts they would plead if given the opportunity to amend, plaintiffs answered that: (1) the day before the shooting, in the course of investigating the pending threat and open homicide case, the police defendants instructed Victor to attend court; and (2) on the day of the shooting, armed sheriff defendants allowed plaintiffs to exit the courthouse building and shooting began immediately upon plaintiffs' exit.

¶ 24    According to plaintiffs, these facts would implicate section 2-202 qualified immunity. For section 2-202 qualified immunity to apply, the public employee must be engaged in the execution or enforcement of law at the time of the willful and wanton conduct. *Pouk v. Village of Romeoville*, 405 Ill. App. 3d 194, 197 (2010). Being engaged in the execution or enforcement of a law means that the public employee is engaged in a course of conduct designed to carry out or put into effect a law. *Id*. Whereas section 4-102 is broad in scope, section 2-202 is narrow in scope, and not every act performed in the course of an officer's employment qualifies as acting in the execution or enforcement of law. *Aikens v. Morris*, 145 Ill. 2d 273, 284 (1991) (officer was not executing or enforcing a law when transporting a jail inmate from one facility to another when he struck the plaintiff's vehicle). The question of whether a public employee is executing or enforcing the law under section 2-202, rather than failing to provide an adequate police protection service under section 4-102, is typically a question of fact. *Payne v. City of Chicago*, 2014 IL App (1st) 123010,

11

¶ 32. However, the question may be decided as a matter of law when the facts alleged are susceptible to only one possible conclusion. *Id.*

¶ 25 A comparison of two cases, *Albert* and *Glover v. City of Chicago*, 2023 IL App (1st) 211353 (petition for leave to appeal denied May 24, 2023), illustrates the scope of section 2-202 and when immunity questions may be decided as a matter of law.

¶ 26 In *Albert*, as here, the plaintiff argued that the trial court erred in finding that section 4-102 absolute immunity applied and argued that section 2-202 qualified immunity applied instead. *Albert*, 2014 IL App (1st) 123544, ¶ 28. Specifically, the plaintiff contended that the school board owed her child a duty not to act willfully or wantonly in its execution or enforcement of the student code of conduct and that it breached that duty in the manner that it disciplined, or failed to discipline, the students earlier that day, which enabled a second, deadly fight to ensue. *Id.* ¶ 40. The parties debated whether the student code could be considered a law subject to execution or enforcement for the purposes of section 2-202. *Id.* ¶ 41. The court answered:

> "Regardless of how plaintiff attempts to couch the facts, here the facts can lead to *only one conclusion*: that the Board was not engaged in executing or enforcing *anything* at the time of the tragic incident leading to Derrion's death, including the student code. Alleging a failure to act means section 2-202 is inapplicable. Plaintiff alleges that the Board *failed* to take certain actions, such as staggering dismissal times or ensuring Derrion's safety after school off school property on his commute home. According to the complaint, the Board was doing nothing at the time of Derrion's injuries. Such allegations can implicate section 4-102, but not section 2-202. 'Section 4-102 immunity may apply in the context where police officers are simply providing or failing to provide police services, but section 2-202 immunity requires more particular circumstances for its application, *i.e.*,

12

an *act or a course of conduct* 'in the execution or enforcement' of law.' When a complaint 'alleges that public employees were doing nothing at the time of an injury,' or 'where a plaintiff alleges that a public employee took some action to enforce a law but then stopped and an injury occurred thereafter," section [2]-202 is inapplicable. Section 2-202 'provides immunity only where the public employee is [willful and wanton] while *actually* engaged in the execution or enforcement of a law." (Internal citations omitted; first emphasis added; subsequent emphases in original.) *Id*. ¶ 42.

¶ 27 In *Glover*, the plaintiff argued that the trial court erred in dismissing his complaint based on its determination that section 4-102, being the more specific immunity provision, controlled over section 2-202. *Glover*, 2023 IL App (1st) 211353, ¶ 28. Specifically, the plaintiff had alleged that the police willfully and wantonly instructed him to step outside the safety of a bar and go to his car despite knowing that the man who had just threatened to shoot him remained outside. *Id*. ¶ 10. The man shot the plaintiff. *Id*.

¶ 28 The appellate court determined that the question was not, in the abstract, whether section 4-102 absolute immunity was a more specific immunity provision such that it trumped section 2-202 qualified immunity in every instance. *Id*. ¶¶ 68-70. Rather, the question was whether the specific circumstances of the case before it more neatly fell within the purview of section 4-102 or section 2-202. *Id*. The appellate court determined that the allegations in the complaint

"do not fall neatly under the purview of a specific immunity provision. These allegations, and the course of police conduct they describe, could well be characterized as either the execution and enforcement of the laws [against disorderly conduct], implicating the qualified immunity of section 2-202, or as a failure to provide police protection service, implicating the absolute immunity of section 4-102." *Id*. ¶ 70.

The appellate court noted that the plaintiff had set forth several precise laws that the officers were at least arguably enforcing when they directed the plaintiff to step outside the bar and go to his car, including the disorderly conduct ordinance. *Id.* ¶ 71 (citing the Chicago Municipal Code § 8-4-010 (amended Sept. 21, 2022)). The court then reversed the dismissal, concluding that a trier of fact should be given the opportunity to determine whether the defendants' actions in enforcing a law against disorderly conduct were a proximate cause of the plaintiff's injuries such that the defendants would be subject to qualified, rather than absolute, immunity. *Id.*

¶ 29 As in *Albert* and unlike in *Glover*, the instant plaintiffs have not identified any laws being enforced by defendants as to plaintiffs; nor were defendants in control of or directing plaintiffs' movements at the time of the shooting. Neither of the two new facts proposed by plaintiffs during oral argument undermine the trial court's assessment that plaintiffs' theory of the case fell squarely within the purview of section 4-102's absolute immunity.

¶ 30 The first new fact—that the police defendants instructed Victor to attend court the next day—speaks to the duty element of the underlying offenses. Conventional tort principles dictate that we all owe each other a duty of ordinary care to guard against injuries that naturally flow as a reasonably probable and foreseeable consequence of an act. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 21. When a defendant's course of action creates a foreseeable risk of injury, the defendant has a duty to protect others from that injury. *Id.* However, accepting for the sake of analysis that the police defendants *created* a foreseeable risk of injury by telling Victor to attend court in compliance with an existing subpoena, and even accepting that the police defendants breached that duty of care by failing to protect Victor after creating that risk, plaintiffs at best establish the elements of their underlying claims. As noted, the trial court gave plaintiffs "the benefit of the doubt" that defendants had a duty to plaintiffs. The question, rather,

14

was whether an immunity applied despite having met the elements of the claims. Instructing Victor to attend court does nothing to undermine the application of section 4-102 absolute immunity.

¶ 31    The second new fact—that the sheriff defendants allowed plaintiffs to exit the courthouse (whereupon their security efforts ceased)—again implicates only section 4-102 absolute immunity. Although the application of section 2-202 is typically one of fact, the proffered facts are susceptible to only one legal conclusion. *Payne*, 2014 IL App (1st) 123010, ¶ 32. The sheriff defendants were not executing or enforcing a law at the time of the injury. Rather, as to plaintiffs, they had ceased executing or enforcing any law and were doing nothing at the time of the injury. See *Albert*, 2014 IL App (1st) 123544, ¶ 42.

¶ 32    Most critical, however, is that unlike in *Glover*, plaintiffs are unable to point to a law that defendants were executing or enforcing that is not itself a subject of section 4-102. Plaintiffs allege that police defendants were investigating a homicide, investigating a threatened homicide, and searching for a suspect. However, these allegations—the failure to solve crimes, prevent crimes, and apprehend criminals—fall squarely into the purview of section 4-102. Plaintiffs allege that the sheriff defendants were performing courthouse security as required by section 3-6023 of the Counties Code (55 ILCS 5/3-6023) (West 2020)). However, the failure to provide adequate police protection services again falls neatly in the purview of section 4-102.

¶ 33    In sum, the trial court gave plaintiffs every benefit of the doubt as to any amendment that might possibly cure the defect in their pleadings. Plaintiffs failed to proffer any facts in the proceedings below or before this court undermining the trial court's assessment that they would be unable to cure the defect in their pleadings. Illinois favors the liberal amendment of pleadings, but there is no absolute right to amend. We cannot say that the trial court abused its discretion

where plaintiffs did not then provide, and still have not provided, proposed facts that would cure the defect in their pleadings.

¶ 34                                III. CONCLUSION

¶ 35          The judgment of the circuit court of Kankakee County is affirmed.

¶ 36          Affirmed.