# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Prough v. Madison County, Illinois*, 2013 IL App (5th) 110146

---

| | |
|---|---|
| Appellate Court Caption | DAVID K. PROUGH, Independent Administrator of the Estate of Dennis K. Prough, Deceased, Plaintiff-Appellant, v. MADISON COUNTY, ILLINOIS, MADISON COUNTY SHERIFF'S DEPARTMENT, MADISON COUNTY SHERIFF ROBERT HERTZ, LIEUTENANT DAVID JOSEPH, and DISPATCHER TERRENCE CHARLESTON, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-11-0146 |
| Filed | February 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the murder of plaintiff's decedent by decedent's son after the son was released from custody by defendant sheriff's deputies, the dismissal of plaintiff's complaint was upheld on the ground that defendants were immune from liability under the Tort Immunity Act, since sections 4-102 and 4-107 of the Act provide absolute immunity from liability for the failures alleged, despite plaintiff's attempt to frame his claim in terms of failing to execute a valid order to detain the killer and present him for a mental health examination. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 10-L-697; the Hon. Dennis R. Ruth, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Allison S. Lorton, of Wittman & Lorton, P.C., of Jerseyville, for appellant. |
| | |
| | William P. Hardy, of Hinshaw & Culbertson LLP, of Springfield, and Heidi L. Eckert, of Hinshaw & Culbertson LLP, of Belleville, for appellees. |
| | |
| Panel | JUSTICE WEXSTTEN delivered the judgment of the court, with opinion. |
| | Justices Welch and Goldenhersh concurred in the judgment and opinion. |

## OPINION

¶ 1    The plaintiff, David K. Prough, as the independent administrator of the estate of Dennis K. Prough, deceased, filed suit against the defendants, Madison County, Illinois, Madison County sheriff's department, Madison County Sheriff Robert Hertz, Lieutenant David Joseph, and Dispatcher Terrence Charleston, seeking damages for the death of the decedent, who was killed by his son, Mark Prough, after Mark was released from custody by the Madison County sheriff's department. The circuit court dismissed the plaintiff's first amended complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615, 2-619 (West 2010)).

¶ 2    On appeal, the plaintiff argues that the circuit court improperly dismissed his action because the defendants owed and violated a duty to the plaintiff's decedent, the defendants were not immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (745 ILCS 10/1-101 to 10-101 (West 2010)), and the defendant Madison County was liable for the conduct of the defendants Madison County sheriff's department, Sheriff Hertz, Lieutenant Joseph, and Dispatcher Charleston, pursuant to the statutory indemnification provisions of the Tort Immunity Act (745 ILCS 10/9-102 (West 2010)). For the following reasons, we affirm the circuit court's dismissal.

¶ 3                    BACKGROUND

¶ 4    In his first amended complaint filed on December 22, 2010, the plaintiff alleged that on May 18, 2009, in the Jersey County circuit court, Brenda Lorton, the decedent's daughter, petitioned for an order of protection against Mark and petitioned the court to order his involuntary detention for the purpose of having him undergo a psychological evaluation pursuant to the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 to

6-107 (West 2010)). On the same date, the circuit court of Jersey County entered the emergency order of protection and entered two fill-in-the-blank "order[s] for detention, examination, diagnostic evaluation" (see 405 ILCS 5/3-704(a) (West 2008)). In one order for detention, the circuit court ordered Mark, who was "asserted to be a person subject to involuntary admission," to submit to an examination "anytime" on May 18, 2009, at Memorial Hospital, Springfield, Illinois, and ordered the clerk to "issue a writ directing a peace officer to take custody of Mark *** and to take him *** to Memorial Hosp[ital] on May 18, 2009, for detention and examination." In the second order for detention, the circuit court ordered Mark to submit to examination at "anytime" on May 18, 2009, at Maple Summit Road, Jerseyville, Illinois and ordered the clerk to "issue a writ directing a peace officer to take custody of Mark *** and to take him *** to Jersey Comm[unity] Hospital on May 18, 2009, for detention and examination."

¶ 5        Accordingly, on the same date, the Jersey County circuit court issued a "Writ for Detention, Examination, and Appearance Before Court," also referred to in the record as a mental health warrant, directing "the peace officer" to "take custody of Mark" and take him to Memorial Hospital, Springfield, Illinois, or Jersey Community Hospital, Jerseyville, Illinois, on May 18, 2009, for detention and examination.

¶ 6        Law enforcement officials in Jersey County were unable to execute the orders or serve the writ because Mark fled to Ozark, Missouri, sometime after the orders and warrant were issued. On July 14, 2009, Ashley Prough, Mark's daughter, spotted Mark in Godfrey, Madison County, and she called the Madison County sheriff's department, stating that Mark was walking on Godfrey Road and had multiple warrants for his arrest. The Madison County sheriff's department dispatcher advised Ashley that there were no active warrants in the law enforcement agencies' data system to require Mark's arrest. After Ashley notified the dispatcher that Mark was wanted in Jersey County, Illinois, and Miller County, Missouri, for death and violent crimes investigations, Madison County sheriff's deputy Robert Weller traveled to Mark's location and confronted him for questioning at 8:30 p.m. Upon questioning by Deputy Weller, Mark provided Deputy Weller with a false name and birth date. Deputy Weller arrested Mark for obstructing a peace officer and transported him to the Madison County jail in Edwardsville, Illinois. In his report, Deputy Weller stated that a records check of Mark's history revealed multiple orders of protection but no active warrants. Mark was booked into the Madison County jail at 10:31 p.m.

¶ 7        Lieutenant Joseph of the Madison County sheriff's department contacted the City of Jerseyville police department and advised it that Mark had been detained and arrested and was in the custody of the Madison County sheriff's department. The City of Jerseyville police department advised Lieutenant Joseph that the Jersey County circuit court had issued the orders for Mark's detention and examination by a mental health facility, along with the mental health warrant, and faxed copies of the orders and warrant to the Madison County sheriff's department. Lieutenant Joseph advised the City of Jerseyville police department that the Madison County jail would not hold Mark based on the Jersey County orders and mental health warrant.

¶ 8        The City of Jerseyville police department advised the Madison County sheriff's department dispatcher, Deborah Thompson, that in addition to the detention orders, the City

of Jerseyville police department sought to question Mark regarding a death investigation in Jersey County and requested that the Madison County sheriff's department not release Mark until a representative of the City of Jerseyville police department or the Jersey County sheriff could take Mark into custody. Thompson advised the City of Jerseyville police department dispatcher that the Madison County sheriff's department would not release Mark.

¶ 9 However, on July 15, 2009, the Madison County sheriff's department released Mark on a recognizance bond of $5,000. Dispatcher Charleston advised the City of Jerseyville police department that the Madison County sheriff's department would not comply with the orders for detention or the mental health warrant and would not consider said orders a hold on Mark. Dispatcher Charleston advised the City of Jerseyville police department that Mark had been released earlier that morning.

¶ 10 On July 20, 2009, Mark traveled to the home of his father, the decedent, and shot him in the chest, causing his death. Mark thereafter started a fire in the decedent's home. On July 29, 2009, Mark was apprehended and charged with the decedent's murder.

¶ 11 On June 30, 2010, the plaintiff filed his original three-count complaint against the defendants alleging liability pursuant to the Illinois Wrongful Death Act (740 ILCS 180/0.1 to 2.2 (West 2010)), the Illinois Survival Act (755 ILCS 5/27-6 (West 2010)), and, as to the defendant Madison County, Illinois, the statutory indemnification provisions of the Tort Immunity Act (745 ILCS 10/9-102 (West 2010)). On December 22, 2010, the plaintiff filed his first amended complaint restating the causes of action against the defendants, seeking to recover damages sustained as a result of the decedent's death. In this first amended complaint, the plaintiff alleged that the defendants' knowing, deliberate, and intentional failure to serve, execute, and return the orders for detention and mental health warrant and their knowing, deliberate, and intentional refusal to detain or hold Mark pursuant to the orders for detention and mental health warrant constituted a reckless disregard for the decedent's safety. The plaintiff alleged that as a result of the defendants' acts and omissions, the decedent endured suffering before his death and serious injuries resulting in his death.

¶ 12 On February 7, 2011, pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2010)), the defendants filed a motion to dismiss the plaintiff's first amended complaint. In their motion, the defendants argued, *inter alia*, that the defendants did not owe a duty to the decedent, that the defendants were immune from liability pursuant to the Tort Immunity Act, and that Madison County was not liable for acts or omissions of a sheriff or his employees.

¶ 13 On February 22, 2011, the plaintiff filed a response to the defendants' motion to dismiss. In his response, the plaintiff argued that the defendants owed a statutory duty to "return all warrants, processes, orders and judgments" pursuant to section 3-6019 of the Counties Code (55 ILCS 5/3-6019 (West 2010)), that the Tort Immunity Act did not protect the defendants from liability because their conduct amounted to willful and wanton misconduct, and that Madison County was a proper party because state law required it to pay damages in a suit against a sheriff and his employees.

¶ 14 On March 11, 2011, after hearing arguments, the circuit court granted the defendants' motion to dismiss. The circuit court determined that the defendants owed no duty to protect

the decedent from Mark's criminal act, that because the order, dated May 18, 2009, needed interpretation, the sheriff's deputy exercised discretion and the defendants were therefore immune under the Tort Immunity Act, and that the defendants were immune pursuant to section 4-107 of the Tort Immunity Act (745 ILCS 10/4-107 (West 2010)), which specifically applies to the failure to make an arrest or the release of a person in custody. On April 5, 2011, the plaintiff timely filed a notice of appeal.

¶ 15    Concurrent with these proceedings, the plaintiff filed a similar action against the Greene County sheriff's department, Ricky Graham, Kerry Page, and Greene County, Illinois, for their failure to serve, execute, and return the mental health warrant and detain Mark. The circuit court of Greene County dismissed the plaintiff's action, and on appeal, the Fourth District Appellate Court affirmed the dismissal, finding that because the May 18, 2009, date of performance had passed, the writ was moot and impossible to perform and that the failure to perform the writ was not the proximate or legal cause of Mark's murder of the decedent. *Prough v. Greene County Sheriff's Department*, 2012 IL App (4th) 110368-U.

¶ 16                                ANALYSIS

¶ 17    The plaintiff argues that the defendants had a statutory and nondiscretionary duty to execute the detention orders and that the defendants were not immune pursuant to the Tort Immunity Act. The defendants counter that they owed no duty to the plaintiff's decedent and that they were immune pursuant to sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2010)).

¶ 18    It is the court's prerogative to forgo the determination of issues unnecessary to the outcome of a case. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 509 (2006); *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 326-27 (1995). Just as the court "may reject an ineffective assistance of counsel claim in a criminal case on the basis of lack of prejudice, assuming counsel's deficient performance, *arguendo*, for purposes of analytical expedience [citation], so may [the court] assume a defendant owes a duty, for the sake of analysis, in order to expedite the resolution of an immunity issue." *DeSmet*, 219 Ill. 2d at 509.

¶ 19    Section 2-619(a)(9) of the Code permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). In moving for a section 2-619 dismissal, the defendant admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Van Meter*, 207 Ill. 2d at 367. When ruling on a section 2-619 motion to dismiss, the court must interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *DeSmet*, 219 Ill. 2d at 504; *Van Meter*, 207 Ill. 2d at 367-68. "Our review of a section 2-619 dismissal is *de novo*." *DeSmet*, 219 Ill. 2d at 504.

¶ 20    Immunity from suit under the Tort Immunity Act is an "affirmative matter" properly raised under section 2-619(a)(9) of the Code. *DeSmet*, 219 Ill. 2d at 504; *Van Meter*, 207 Ill. 2d at 366-67; 735 ILCS 5/2-619(a)(9) (West 2010). "Because the immunities afforded to

governmental entities operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act." *Van Meter*, 207 Ill. 2d at 370; *DeSmet*, 219 Ill. 2d at 504. "It is only when the governmental entities have met this burden that a plaintiff's right to recovery is barred." *Van Meter*, 207 Ill. 2d at 370.

¶ 21   Under the common law in Illinois, a governmental body was absolutely immune from all tort liability. "The original basis of [this] immunity rule has been called a 'survival of the medieval idea that the sovereign can do no wrong,' or that 'the King can do no wrong.' (38 Am. Jur., Mun. Corps., sec. 573, p. 266.)" *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 20 (1959). In *Molitor*, the Illinois Supreme Court abolished the doctrine of sovereign immunity. *Molitor*, 18 Ill. 2d at 21-22. In response to *Molitor*, however, the legislature passed the Tort Immunity Act in 1965 (Ill. Rev. Stat. 1965, ch. 85, ¶¶ 1-101 to 10-101 (now 745 ILCS 10/1-101 to 10-101 (West 2010))), and the Tort Immunity Act restored immunity for governmental entities in certain circumstances. *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 43 (1998). After the passage of the Tort Immunity Act, article XIII, section 4, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 4) also abolished sovereign immunity and made the legislature the ultimate authority to determine under what circumstances units of local government would be immune from tort liability. *DeSmet*, 219 Ill. 2d at 506.

¶ 22   Accordingly, since the abolishment of sovereign immunity in Illinois, a unit of local government is liable in tort to the same extent as a private party unless an immunity established by the legislature in the Tort Immunity Act applies. *Van Meter*, 207 Ill. 2d at 368-69. The Tort Immunity Act does not establish any new duties for governmental entities but "merely codifies those duties existing at common law, to which the subsequently delineated immunities apply." *Barnett v. Zion Park District*, 171 Ill. 2d 378, 386 (1996). "[T]he purpose of the [Tort Immunity] Act is to protect local public entities and public employees from liability arising from the operation of government." *DeSmet*, 219 Ill. 2d at 505. By enacting immunity provisions, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims. *Id.* Because the Tort Immunity Act "was enacted in derogation of the common law, it must be strictly construed." *Van Meter*, 207 Ill. 2d at 368.

¶ 23   Section 4-102 of the Tort Immunity Act provides as follows:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2010).

"[S]ection 4-102 of the Tort Immunity Act codifies the separate common law rule that municipalities or their employees are not liable for failure to supply police or fire protection." *Aikens v. Morris*, 145 Ill. 2d 273, 278 n.1 (1991); see also *DeSmet*, 219 Ill. 2d at 508-09 (supreme court's comments in *Aikens* suggest that the public duty rule, wherein the police dep2artment's duty to preserve the well-being of the community is owed to the public at large, rather than specific individuals, has been incorporated into the Tort Immunity Act as

an immunity). This section provides absolute immunity, and "when the applicable provisions of the Tort Immunity Act provide absolute immunity, the plaintiff's claim is barred." *Moore v. Green*, 219 Ill. 2d 470, 478 (2006).

¶ 24    Likewise, section 4-107 of the Tort Immunity Act provides as follows:

"Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." 745 ILCS 10/4-107 (West 2010).

This section also provides absolute immunity. *Moore*, 219 Ill. 2d at 478.

¶ 25    In *DeSmet*, the supreme court made clear that when a provision of the Tort Immunity Act contains no exception for willful and wanton misconduct, one must not be read into the provision. *DeSmet*, 219 Ill. 2d at 514; see also *Ries v. City of Chicago*, 242 Ill. 2d 205, 227-28 (2011) (section 2-202 does not provide a willful and wanton exception to any of the other sections of the Tort Immunity Act). In *DeSmet*, the police failed to respond to a report that a car had driven off of a highway and into a ditch, and the motorist was found dead next to her vehicle three days later. *DeSmet*, 219 Ill. 2d at 500-02. The supreme court held that the defendants were immune under section 4-102 of the Tort Immunity Act (*id.* at 505) and that the plaintiffs could not avoid this immunity by pleading willful and wanton misconduct:

"When the plain language of an immunity provision in the Tort Immunity Act contains no exception for willful and wanton misconduct, we have reasoned that the legislature ' "intended to immunize liability for both negligence and willful and wanton misconduct." ' *Village of Bloomingdale* [*v. CDG Enterprises, Inc.*], 196 Ill. 2d [484,] 491 [(2001)], quoting *Barnett*, 171 Ill. 2d at 391-92. ***

Section 4-102 of the Act is comprehensive in the breadth of its reach, addressing situations where no police protection is provided to the general public and those in which inadequate protection is provided. Moreover, section 4-102 contains no exception for willful and wanton misconduct. We hold, given the facts of this case, that section 4-102 immunizes defendants against both negligence and willful and wanton misconduct." *DeSmet*, 219 Ill. 2d at 514-15.

¶ 26    In this case, the plaintiff seeks to hold the defendants liable for failing to provide adequate police protection by retaining Mark in their custody, for failing to prevent the commission of Mark's crime, and/or for releasing Mark from their custody. The plain language of sections 4-102 and 4-107 of the Tort Immunity Act (745 ILCS 10/4-102, 4-107 (West 2010)) clearly apply here to immunize the defendants for these alleged failures. Sections 4-102 and 4-107 are specific provisions and contain no exception for willful and wanton misconduct. See *Ries*, 242 Ill. 2d at 221 (even if section 2-202 applied, it could not prevail over section 4-106(b), which applies more specifically and contains no exception for willful and wanton misconduct). Accordingly, the plaintiff's suit fails.

¶ 27    The plaintiff argues that the defendants are not immune from liability because sections 4-102 and 4-107 of the Tort Immunity Act are inapplicable. The plaintiff argues that he does not seek to impose liability on the defendants for failing to provide adequate police protection services, for failing to apprehend Mark, or for releasing Mark from their custody. The plaintiff argues that he seeks to hold the defendants liable for failing to comply with the

valid detention orders and for violating their statutory duty to serve and execute all orders. 55 ILCS 5/3-6019 (West 2010) ("Sheriffs shall serve and execute, within their respective counties, and return all warrants, process, orders and judgments of every description that may be legally directed or delivered to them.").

¶ 28 Courts have rejected similar attempts to avoid application of the Tort Immunity Act. For example, in *Ries*, the plaintiffs were injured when a person in custody managed to gain control of the police vehicle and drive off. *Ries*, 242 Ill. 2d at 218. Other police officers initiated a pursuit of the driver, who ultimately crashed into the plaintiffs' vehicle. *Id.* at 207. The plaintiffs attempted to avoid application of section 4-106(b) of the Tort Immunity Act (745 ILCS 10/4-106(b) (West 2008)), immunizing a public entity for injury inflicted by an escaping prisoner, by arguing that section 4-106(b) did not cover the police officers' conduct in failing to properly restrain the person in custody initially and then in recklessly pursuing him through the streets of Chicago. *Ries*, 242 Ill. 2d at 219. The supreme court held that this argument was "mere semantics designed to avoid a clearly applicable immunity" and that accepting such a position could render section 4-106(b) a nullity. *Id.* ("Plaintiffs' injuries were inflicted by an escaping prisoner, and [plaintiffs] cannot avoid section 4-106(b) by arguing that their case was really about something else.").

¶ 29 Here, the plaintiff seeks to avoid the applicable immunity provisions by framing his action in terms of the defendants' failure to execute the detention orders and present Mark for examination or their failure to hold Mark pursuant to the detention orders. Yet, his action seeks to hold the defendants liable for failing to provide adequate police service, failing to prevent Mark's crime, and/or releasing him from their custody, actions specifically barred by the Tort Immunity Act. 745 ILCS 10/4-102, 4-107 (West 2010). The plaintiff cannot avoid sections 4-102 and 4-107 of the Tort Immunity Act by arguing that his case is really about something else. See *Ries*, 242 Ill. 2d at 219.

¶ 30 Mischaracterizing the detention orders as involuntary admission orders, the plaintiff argues that the defendants are to be held liable for their failure to obey the command of the valid orders and hold Mark pursuant thereto.

¶ 31 In *Mallder v. Rasmussen*, 145 Ill. App. 3d 809, 810 (1986), the court addressed the defendant's alleged liability, predicated on the negligent or willful and wanton failure of a deputy sheriff to arrest a driver pursuant to a valid outstanding warrant. When the deputy came into direct contact with the driver about six hours before a fatal collision, he was aware of the outstanding arrest warrant for the driver and knew him to be an alcoholic with a prior record for driving under the influence. *Id.* at 810-11. The deputy saw the driver consuming alcohol at a residence but did not see him operate a motor vehicle. *Id.* at 811. The deputy notified the driver about the warrant, and the driver agreed to report to the sheriff's office the following Monday morning. *Id.*

¶ 32 The plaintiff in *Mallder* urged the court to find that sections 4-102 and 4-107 of the Tort Immunity Act did not apply because a warrant had been issued. *Id.* at 813. However, the court in *Mallder* refused to draw a distinction based upon the existence of the warrant. *Id.* The court declined "to limit the protection of governmental immunity to warrantless-arrest situations in the absence of express legislative authority." *Id.*

¶ 33    Likewise, we decline to limit the protection of governmental immunity where a mental health warrant and orders for detention, examination, and diagnostic mental evaluation (405 ILCS 5/3-701(a) (West 2008)) have been issued. We refuse to draw a distinction based upon the existence of the warrant and orders to avoid the applications of sections 4-102 and 4-107 of the Tort Immunity Act, protecting the defendants from liability for failing to prevent the commission of crimes, for failing to make an arrest, and for releasing a person from their custody. *Mallder*, 145 Ill. App. 3d at 813. The plain language of these sections reveals the legislature's intent to immunize liability for both negligence and willful and wanton misconduct. Accordingly, the plaintiff's suit fails. While our conclusions lead to a harsh result for the plaintiff, we are bound by the legislature, whose plain language is the ultimate authority in determining a public entity's immunity from liability. See *Village of Bloomingdale*, 196 Ill. 2d at 499. Because we conclude that the defendants have absolute immunity from the plaintiff's suit, we need not address the parties' remaining arguments.

¶ 34                                    CONCLUSION

¶ 35    For the foregoing reasons, we affirm the order of the circuit court of Madison County dismissing the plaintiff's action.

¶ 36    Affirmed.