2023 IL App (1st) 211353

SIXTH DIVISION
February 10, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-21-1353

| | | |
|---|---|---|
| ROBERT GLOVER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| THE CITY OF CHICAGO; ELLIOT TUPAYACHI, Star | ) | No. 2020 L 12770 |
| No. 18875, and ASHTON MCCLEAN-HALL, Star No. | ) | |
| 7370; and TWO UNNAMED EMPLOYEES OF THE | ) | Honorable |
| CITY OF CHICAGO, | ) | Gerald Cleary, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |
| | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices C.A. Walker and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Robert Glover sued the City of Chicago (City), two Chicago police officers, and two unnamed City employees (collectively, defendants) for injuries suffered when he was shot multiple times by a third party named Jeremy Grayson. The shooting took place on the street outside of a late-night bar where, earlier that evening, Mr. Glover and Mr. Grayson had gotten into an argument. In his complaint, Mr. Glover alleged that he would not have suffered his injuries if not for the negligent and willful and wanton conduct of the officers named in the suit, who, he asserted, caused him to leave the safety of the bar to come outside and confront Mr. Grayson, even

though the officers had reason to believe that Mr. Grayson was armed and intent on harming Mr. Glover.

¶ 2    The circuit court dismissed the suit, citing two provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act): section 4-102 (745 ILCS 10/4-102 (West 2020)), which confers absolute immunity on public employees for the "failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals," and section 4-107 (*id.* § 4-107), which confers absolute immunity "for an injury caused by the failure to make an arrest or by releasing a person in custody." Mr. Glover appeals the dismissal.

¶ 3    For the reasons that follow, we reverse the circuit court's dismissal of Mr. Glover's suit and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. The Shooting

¶ 6    The allegations of the complaint were as follows. On February 9, 2020, Mr. Glover met a friend at a late-night bar called "Tai's til 4." Mr. Glover got into an argument with another patron, Jeremy Grayson. During the argument, Mr. Grayson stated that he had a gun and threatened to kill Mr. Glover. Mr. Grayson then demanded that Mr. Glover step outside with him. When Mr. Glover refused, Mr. Grayson threatened to "shoot up the place."

¶ 7    The owner of the bar, Blake Itagaki, overheard Mr. Grayson's threats, called the police, and directed Mr. Grayson to go outside. Mr. Grayson complied and left the building.

¶ 8    Police officers Elliot Tupayachi and Ashton McClean-Hall arrived three or four minutes later and encountered Mr. Grayson on the sidewalk in front of the bar. Mr. Glover remained inside the premises. Mr. Itagaki joined the officers outside and explained that he was preventing Mr.

Glover from exiting his bar because he had heard Mr. Grayson say that he had a gun and that he planned on killing Mr. Glover when he stepped outside.

¶ 9      For the next 10 minutes, the officers tried to get Mr. Grayson to walk away and go home, but he refused, telling the officers he would not leave until Mr. Glover came outside and apologized to him. During this conversation, Mr. Grayson admitted that he had threatened to kill Mr. Glover but claimed that Mr. Glover had threatened to kill him as well. He told the officers that they should be talking to Mr. Glover, not him. At no point during this encounter did the officers ask Mr. Grayson if he had a gun or pat him down.

¶ 10      At the request of the officers, Mr. Glover left the bar and stepped outside, where he encountered Mr. Grayson. The two exchanged words and gestures. The officers then directed Mr. Glover to go to his car, which was parked across the street, and they ordered Mr. Grayson to go home. Mr. Glover headed for his car, and Mr. Grayson started to walk away from the officers, but after "about 39 seconds," as Mr. Glover reached his car, Mr. Grayson crossed the street, pulled out a gun, and shot Mr. Glover multiple times.

¶ 11      The officers pursued Mr. Grayson, who was killed shortly thereafter in a shootout with the police.

¶ 12                              B. Mr. Glover's Initial Complaint

¶ 13      Mr. Glover filed his initial two-count complaint on December 1, 2020. Count I, for negligence, alleged that Officers Tupayachi and McClean-Hall were "uniquely aware" of the "particular danger or risk" Mr. Grayson posed to Mr. Glover and that they "affirmatively failed to [perform] their sacred duty to protect [him] from harm by failing to disarm [Mr.] Grayson, knowing full well that [Mr.] Grayson had threatened to kill [him]." He further alleged that the officers had "initiated a dangerous situation by failing to search [Mr.] Grayson for a gun" and that

3

the officers' "specific acts and omissions" were "willful and wanton and affirmative in nature." Count II asserted the same claim of negligence against the City under the doctrine of *respondeat superior*.

¶ 14    Defendants moved to dismiss the suit on February 16, 2021, filing a combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). Defendants first argued that dismissal under section 2-615 of the Code (*id.* § 2-615) was warranted because, absent a special relationship between the parties (*i.e.*, common carrier-passenger, innkeeper-guest, business inviter-invitee, etc.), they owed no affirmative duty to protect Mr. Glover from the criminal acts of a third party. According to defendants, as Mr. Glover alleged no facts establishing that such a relationship existed between himself and defendants, his complaint failed to state a claim upon which relief could be granted. Defendants also asserted that Mr. Glover had failed to allege facts that, if taken as true, would establish his injuries were reasonably foreseeable.

¶ 15    Defendants next argued that the complaint also warranted dismissal, pursuant to section 2-619 of the Code (*id.* § 2-619), on the basis that several provisions of the Tort Immunity Act defeated Mr. Glover's claims. Specifically, defendants maintained that the officers were immune under sections 4-102 and 4-107 (745 ILCS 10/4-102, 4-107 (West 2020)) and the City, as their employer, was immune under section 2-109 (*id.* § 2-109).

¶ 16    In response to this motion, Mr. Glover sought and was granted leave to amend his complaint.

¶ 17                    C. Mr. Glover's First Amended Complaint

¶ 18    Mr. Glover filed his first amended complaint on March 25, 2021. Count I was restated to allege that the officers "owed a special duty to [him] to exercise due care and caution to protect

him from a specific risk and danger of being shot by Jeremy Grayson" and that they had breached that duty. Count II alleged negligence against the City under the doctrine of *respondeat superior*. Count III alleged that the "acts and omissions of the officers were willful and wanton" and reflected a deliberate indifference to Mr. Glover's safety. Count IV asserted the same claim against the City.

¶ 19    On April 22, 2021, defendants again moved to dismiss the complaint pursuant to section 2-619.1 of the Code, citing the same arguments they raised in their initial motion to dismiss.

¶ 20    Mr. Glover responded to defendants' motion to dismiss on June 11, 2021. Addressing their section 2-615 argument, Mr. Glover argued that he had sufficiently pleaded the basic elements of "negligence based on a special duty, as well as willful and wanton conduct." Mr. Glover cited *Gordon v. County of Jackson*, 231 Ill. App. 3d 1017, 1021 (1992), a decision holding that a special duty arises where a " 'public employee creates a position of peril ultimately injurious to a plaintiff, as opposed to situations where a plaintiff merely seeks protection from the public employee that is not normally provided.' "

¶ 21    In response to defendants' section 2-619 arguments, Mr. Glover argued that section 4-102 does not apply when a public employee is executing or enforcing any law, which a jury could reasonably find is what was occurring in this case at the time of Mr. Glover's injury. In such situations, the only relevant immunity provision is section 2-202 of the Act, which provides qualified immunity to public employees for acts or omissions "in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2020).

¶ 22    In their reply, defendants noted that Mr. Glover's entire section 2-615 argument, including his reliance on *Gordon*, was predicated on "the public duty rule and its special duty exception," a doctrine which had been abolished by the Illinois Supreme Court in *Coleman v. East Joliet Fire*

*Protection District*, 2016 IL 117952, ¶¶ 52, 61 (opinion of Kilbride, J., joined by Burke, J.). Post-*Coleman*, defendants explained, the only way Mr. Glover could establish a duty was through conventional tort principles. He had failed to do so, they insisted, and had instead relied on a defunct doctrine.

¶ 23    Defendants maintained that sections 4-102 and 4-107 of the Act more specifically described what Mr. Glover alleged occurred than section 2-202. They further asserted that for section 2-202 to apply, a defendant is not only required to be "actually enforcing and executing the law," but the plaintiff must be under the direct and immediate control of the defendant at the time of the injury. Here, Mr. Glover's section 2-202 argument failed because he did not identify what law the officers were executing and enforcing at the time of his injury. Additionally, even if the allegations supported a claim that the officers were executing and enforcing a law "when they responded to the scene and talked to the parties," it was clear that they were no longer doing so when Mr. Glover was injured.

¶ 24                              D. The Circuit Court's Dismissal Orders

¶ 25    On July 12, 2021, the circuit court entered an order denying in part and granting in part defendants' motion to dismiss. The court rejected defendants' section 2-615 arguments, concluding that under conventional tort principles, "the defendants owed the plaintiff a duty of care to refrain from willful and wanton conduct in the execution or enforcement of the law." In ruling on the section 2-619 portion, the court found that section 2-202 of the Act applied because it allows "claims for willful and wanton conduct in the execution and enforcement of any laws" and "whether the defendants were executing or enforcing any law at the time of the occurrence [was] a question of fact" sufficient to preclude dismissal. In the court's view, counts III and IV, based on willful and wanton conduct, survived dismissal while counts I and II, which alleged

ordinary negligence, did not because public employees are immune from such claims under section 2-202.

¶ 26   Defendants filed a partial motion to reconsider on August 11, 2021, taking issue with the court's immunity findings and drawing the court's attention to *Ries v. City of Chicago*, 242 Ill. 2d 205, 220 (2011), where the Illinois Supreme Court held that when two sections of the Tort Immunity Act potentially apply, the more specifically applicable immunity provision controls. Here, defendants contended that sections 4-102 and section 4-107 were more specifically applicable to the facts alleged in the complaint than section 2-202. They also challenged the court's duty analysis, explaining that section 2-202 does not independently provide a duty of care, as the Act "was created only as a shield for the benefit of government employees and cannot be used as a sword against them."

¶ 27   Mr. Glover responded that the court's initial immunity analysis was sound and that, based on the facts alleged in the complaint, neither section 4-102 nor 4-107 applied. Mr. Glover also contended that defendants were misinterpreting the court's duty analysis, which was derived not from section 2-202 as defendants alleged, but from common law tort principles.

¶ 28   On August 31, 2021, the court issued an order denying in part and granting in part defendants' motion to reconsider. The court explained that it had not found that section 2-202 established a duty but instead had "analyzed conventional tort principles and the applicable immunity provisions to determine the issue of duty." However, on the immunity issue, the court explained that, in light of *Ries*, 242 Ill. 2d at 220, it had misapplied the law in its prior order. The court ruled that,

> "the plaintiff alleges that the defendants failed to detect or solve crimes in their failure to
>
> ask if [Mr.] Grayson had a gun and failure to pat [Mr.] Grayson down, failed to arrest [Mr.]

Grayson after the defendants established probable cause for the arrest and failed to prevent the commission of a crime of [Mr.] Grayson shooting the plaintiff ***. The Court further finds that while 745 ILCS 10/2-202, 745 ILCS 10/4-102 and 745 ILCS 10/4-107 may apply, 4-102 and 4-107 are the more specific immunities that apply to the plaintiff's complaint. Consequently, 4-102 and 4-107 provide absolute immunity for the allege[d] acts of misconduct and the dismissal of Counts III and IV with prejudice is proper."

¶ 29    On September 2, 2021, Mr. Glover filed a motion to reconsider the court's second dismissal order. Following briefing, the circuit court denied the motion on September 27, 2021. Mr. Glover now appeals.

¶ 30                                    II. JURISDICTION

¶ 31    The circuit court denied Mr. Glover's motion to reconsider its dismissal of his amended complaint with prejudice on September 27, 2021. Mr. Glover timely filed his notice of appeal on October 20, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 32                                    III. ANALYSIS

¶ 33    On appeal, Mr. Glover urges us to reverse the complete dismissal of his amended complaint and remand with instructions to reinstate counts III and IV, which allege willful and wanton conduct. He argues that the circuit court's ruling granting defendants' section 2-619 motion to dismiss rested on a misapplication of sections 4-102 and 4-107 of the Act, as the factual allegations in his complaint "can only reasonably be interpreted as alleging Defendants were at the scene to enforce or execute laws," thus implicating section 2-202 "much more clearly than sections 4-102 and 4-107." Mr. Glover argues it was premature to dismiss his claims at this point, where there are

8

questions of fact as to whether defendants were enforcing or executing the law or engaged in activities described in sections 4-102 or 4-107.

¶ 34    In response, defendants first argue that dismissal should have been granted by the circuit court under section 2-615. Defendants next argue that the circuit court's application of sections 4-102 and 4-107 was correct and that counts III and IV of Mr. Glover's complaint were properly dismissed on that basis as well.

¶ 35    In our view, the circuit court's initial July 12, 2021, ruling was correct, before defendants moved to reconsider. The applicability of section 2-202 hinges on whether, at the time of the occurrence, defendants were executing or enforcing the law. We cannot make this determination based on such an undeveloped record, and a liberal reading of Mr. Glover's complaint would support a claim that section 2-202 applies. For the reasons set forth in this opinion, we reverse the circuit court's ruling granting defendants' section 2-619 motion as to counts III and IV. We also reject defendants' argument that dismissal should be affirmed under section 2-615.

¶ 36    Because defendants have chosen to lead with their 2-615 argument—and because we agree with defendants that there would be no need to consider immunity if, in fact, defendants owed Mr. Glover no duty of care—we begin by addressing the circuit court's decision not to dismiss this complaint under section 2-615. We then consider the court's ruling under section 2-619.

¶ 37                    A. Defendants' Section 2-615 Motion to Dismiss

¶ 38    A motion to dismiss brought pursuant to section 2-615 is "a facial challenge asserting that the complaint fails to state a cause of action upon which relief can be granted." *Village of Willow Springs v. Village of Lemont*, 2016 IL App (1st) 152670, ¶ 22. The question raised by such a motion is "whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted."

9

*Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). As Illinois is a fact-pleading jurisdiction, "a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). A court will grant a section 2-615 motion only if "it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover." *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115 (1995). Our review is *de novo*. *Napleton*, 229 Ill. 2d at 305.

¶ 39                             1. Mr. Glover's Forfeiture Argument

¶ 40    Before addressing the merits of defendants' section 2-615 arguments, we first briefly consider, and reject, the assertion made in Mr. Glover's reply brief that defendants failed to preserve this argument by not filing a cross-appeal challenging the circuit court's denial of their section 2-615 motion.

¶ 41    Citing *Cleys v. Village of Palatine*, 89 Ill. App. 3d 630, 635 (1980), Mr. Glover argues that "where a general decision for the appellee contains a specific finding unfavorable to him and he fails to file a cross-appeal, the adverse finding is not properly before the reviewing court." Here, Mr. Glover asserts, "the Circuit Court's final judgment contained not just specific findings that were unfavorable to Defendants, but an outright denial of Defendants' motion to dismiss and arguments under section 2-615." By not cross appealing that "outright denial," Mr. Glover argues, defendants forfeited the ability to discuss section 2-615 in response to his appeal. We disagree.

¶ 42    In *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387 (1983)—a case in which a defendant relied on the holding in *Cleys* in precisely the same way Mr. Glover attempts to here—our supreme court held that "[f]indings of the trial court adverse to the appellee *do not require* the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." (Emphasis added.) Where a party is granted "all of the requested relief," filing a

cross-appeal is unnecessary to preserve particular issues decided against that party. *Id.* In other words, in deciding whether an appellee is required to file cross-appeal to preserve an issue, the focus is on the relief granted by the circuit court and not, as Mr. Glover contends, on the existence of some unfavorable finding in the record.

¶ 43 In their section 2-619.1 motion, defendants argued both that Mr. Glover's complaint merited dismissal under section 2-615 for failing to allege facts establishing a duty and that it also merited dismissal under section 2-619 because defendants were immune from liability under various provisions of the Act. While it is true the circuit court rejected defendants' section 2-615 argument, that adverse finding proved inconsequential in the end, as they ultimately received "all the requested relief" when the circuit court dismissed Mr. Glover's entire complaint with prejudice under section 2-619. As *Material Service* makes clear, it was unnecessary for them to file a cross-appeal to preserve their right to argue in the alternative that dismissal under section 2-615 was also proper.

¶ 44                                     2. Dismissal Under Section 2-615

¶ 45 Defendants argue that Mr. Glover's complaint warranted dismissal under section 2-615 on the basis that he failed to allege sufficient facts establishing the officers owed him a duty of care. Their argument is twofold. First, they note that the only duty expressly mentioned in Mr. Glover's operative complaint was a "special duty" to "exercise due care and caution to protect him from a specific risk and danger of being shot by Jeremy Grayson." They argue that the "special duty" alluded to by Mr. Glover, and owed by public employees only in limited circumstances, was expressly abolished by the Illinois Supreme Court in *Coleman*, 2016 IL 117952, ¶ 61. Thus, "because [Mr.] Glover asserted only a duty that does not exist, dismissal was proper." Next, defendants contend that under well-settled common law principles in Illinois, an affirmative duty

to protect another from being harmed by the criminal acts of a third party only arises where a special relationship exists between the parties. Here, defendants contend that Mr. Glover failed to allege any facts that, taken as true, would establish the elements of such a relationship between himself and defendants.

¶ 46    Defendants are correct that Mr. Glover's use of the phrase "special duty" was incorrect. Not only did he expressly state in his amended complaint that defendants owed him a "special duty" to protect him from being shot, but he elaborated on what he meant by this phrase in his response to their motion to dismiss, where he cited two cases—*Hess v. Flores*, 408 Ill. App. 3d 631, 637 (2011), and *Gordon*, 231 Ill. App. 3d at 1020—both of which dealt with the now-defunct special duty exception to the common-law public duty rule.

¶ 47    The public duty rule, which provided that local governmental entities and their employees owed no duty of care to individual members of the general public to provide governmental services, and the "special duty" exception to this rule were both abolished by our supreme court in *Coleman*, 2016 IL 117952, ¶ 61. There, the court concluded that the underlying purpose of the rule—to limit, but not to preclude, liability for public employees—would be better served by "application of conventional tort principles and the immunity protection afforded by statutes." *Id.*

¶ 48    In its order, the circuit court acknowledged that the special duty exception alluded to in Mr. Glover's complaint was no longer good law. However, upon analyzing the facts alleged through the prism of conventional tort principles, as the *Coleman* court instructs, the circuit court concluded that even if Mr. Glover used imprecise language in his complaint, he nonetheless alleged sufficient facts to support the existence of a common-law duty of ordinary care. We agree with the circuit court.

¶ 49    Liberally construing Mr. Glover's complaint, as we are required to do, means examining

not just its stated legal conclusions, but the facts alleged and the reasonable inferences arising therefrom. *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 123 (1986). While Mr. Glover's use of the phrase "special duty" was inapt, his complaint contained sufficient facts to establish the existence of a common-law duty.

¶ 50　　The duty of ordinary care we all owe each other is a broad one. As our supreme court stated in *Doe-3 v. McLean County Unit Dist. No. 5 Board of Directors*, 2012 IL 122479, ¶ 21, it is axiomatic that

> " ' "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." ' "

Where a defendant's course of action "creates a foreseeable risk of injury, the defendant has a duty to protect others from such injury." *Id.*

¶ 51　　Defendants argue that this analysis is inapplicable here because the "gravamen of [Mr.] Glover's claims against the officers" was that they failed to protect him. Citing *Iseberg v. Gross*, 227 Ill. 2d 78, 87-88 (2007), defendants assert that "under the common law, no person—whether a public employee or not—owes a duty to protect another from a criminal attack by a third person unless the parties are in one of certain 'special relationships': 'common carrier-passenger, innkeeper-guest, business inviter-invitee, and voluntary custodian-ward.' " Their position is that because Mr. Glover's alleged injury stemmed from *a failure* to act, as opposed to an affirmative act, and he never alleged the elements of a special relationship, his complaint fails to allege any breach of a duty of care.

¶ 52　　However, this ignores a central allegation in Mr. Glover's complaint. While defendants are

correct that, in general, there is no affirmative duty to protect another from a criminal attack by a third party, the actionable conduct alleged in this case was not limited to the omissions and failures to protect described by Mr. Glover in his complaint. Mr. Glover also alleged that the responding officers requested that he step outside the bar and then directed him to go to his car. These were affirmative acts that arguably increased his exposure to harm. The injury in this case did not stem solely from the responding officers' alleged inaction or refusal to intervene. If there were strictly a failure to protect, no duty would be owed. But here, the allegations of the complaint, liberally construed, support a claim that the officers were active participants in the sequence of events leading up to Mr. Glover's injury and that they intervened in a way that affirmatively placed him in danger.

¶ 53    While imperfect, Mr. Glover's complaint alleged sufficient facts to demonstrate that defendants owed him a duty of care. We therefore affirm the circuit court's denial of defendants' section 2-615 motion to dismiss. Given this holding, we need not decide whether Mr. Glover alleged sufficient facts establishing a voluntary custodian/protectee relationship. Since we have determined that Mr. Glover adequately pled the existence of a duty, under the principle elaborated by our supreme court in *Coleman*, 2016 IL 117952, ¶ 61, potential liability in this case turns on the extent to which the legislature has provided defendants with tort immunity.

¶ 54                    B. Defendants' Section 2-619 Motion to Dismiss

¶ 55    We turn next to the parties' arguments for dismissal under section 2-619. A motion to dismiss under this section admits the sufficiency of the complaint but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the cause of action. *Jenkins v. Concorde Acceptance Corp.* 345 Ill. App. 3d 669, 674 (2003). Immunity under the Act is an affirmative matter properly raised in a section

2-619 motion. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). When reviewing a motion to dismiss under section 2-619, we accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in their favor. *Pearson v. Pearson*, 2020 IL App (1st) 190717, ¶ 20. Dismissal under section 2-619 is not warranted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Id.* As with a section 2-615 dismissal, our review is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000).

¶ 56    Mr. Glover argues that the circuit court erred in dismissing his case with prejudice, pursuant to section 2-619, on the basis that defendants were entitled to absolute immunity under sections 4-102 and 4-107 of the Act. He argues that the facts alleged in his complaint can only reasonably be interpreted as alleging that defendants were at the scene to enforce or execute laws, which would implicate section 2-202 of the Act much more clearly than sections 4-102 or 4-107. Mr. Glover also points out that "[n]o discovery had been conducted in the case, so no evidence exists in the record regarding the events or the officers' activities at the scene of [Mr. Glover's] injury" and "no evidence outside the pleadings was submitted by Defendants to justify the application of section 4-102 or section 4-107 to the facts here."

¶ 57    Defendants argue that they were entitled to absolute immunity from liability under sections 4-102 and 4-107 of the Tort Immunity Act. Citing *Ries*, 242 Ill. 2d at 220, defendants contend that where more than one immunity may apply, the more specifically applicable immunity controls and here, where "the gravamen of [Mr.] Glover's claims" was that the officers failed to protect him in various ways, sections 4-102 and 4-107 control.

¶ 58    Before directly addressing the parties' section 2-619 arguments, we begin with a brief overview of these three, often intertwined, immunity provisions.

¶ 59          1. Sections 4-102, 2-202, and 4-107 of the Tort Immunity Act

¶ 60     Section 4-102 of the Act, titled "Police protection," reads as follows:

"Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals." 745 ILCS 10/4-102 (West 2020).

¶ 61     In addition to immunizing both public entities and public employees for injuries caused by failure to perform several specific law enforcement related functions—failure to prevent, detect, or solve crimes, and the failure to identify or apprehend criminals—section 4-102 also provides absolute immunity for injuries caused by a more general failure to "provide police protection; or, if police protection is provided, [ ] failure to provide adequate police protection service." *Payne v. City of Chicago*, 2014 IL App (1st) 123010, ¶ 27.

¶ 62     The Act does not provide a definition for "police protection service," but reviewing courts have generally cited this clause when granting immunity to police officers and other public employees who allegedly caused injury while performing, or failing to perform, some policing function *other than* traditional law enforcement. For example, defendants were immune where police officers were providing aid, assistance, or rescue services to stranded drivers and vehicles involved in traffic accidents (*Long v. Soderquist*, 126 Ill. App. 3d 1059 (1984); *Kavanaugh v. Midwest Club, Inc.*, 164 Ill. App. 3d 213 (1987)), law enforcement failed to respond after receiving a call to assist a motorist who had driven off the road (*DeSmet v. County of Rock Island*, 219 Ill. 2d 497 (2006)), and in cases where the injury occurred during a poorly executed protective mental health detention (*Payne*, 2014 IL App (1st) 123010; see also *Turner v. City of Champaign*, 979

F.3d 563, 571 (7th Cir. 2020) (noting that "protective mental-health detentions, unlike criminal arrests, are covered by § 4-102's absolute immunity provision")). Similarly, the "police protection services" clause of section 4-102 may also apply where a police officer injures someone while performing, or failing to perform, a "community caretaking" function (*DeSmet*, 219 Ill. 2d at 520), something our supreme court has defined in other contexts as the "capacity in which the police act when they are performing some task unrelated to the investigation of crime, such as helping children find their parents, mediating noise disputes, responding to calls about missing persons or sick neighbors, or helping inebriates find their way home" (*People v. McDonough*, 239 Ill. 2d 260, 269 (2010)).

¶ 63    Section 2-202 reads, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2020). As our supreme court explained in *Aikens v. Morris*, 145 Ill. 2d 273, 282 (1991), section 2-202 requires "more particular circumstances for its application" than section 4-102. Additionally, unlike section 4-102, the immunity afforded under section 2-202 is qualified rather than absolute; a police officer is entitled to immunity under the provision *unless* the officer's conduct was "willful and wanton." This is defined elsewhere in the Act as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2020).

¶ 64    Determining whether a police officer is engaged in the "execution or enforcement of any law" (*id.* § 2-202) at the time of injury—thus triggering section 2-202 as the operative immunity provision—is a fact-specific inquiry. *Payne*, 2014 IL App (1st) 123010, ¶ 32. Generally, section 2-202 is implicated when an officer "engage[s] in a course of conduct designed to carry out or put

into effect any law." *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986). Courts have found that an officer is executing or enforcing the law when he or she makes an arrest (*Glover v. City of Chicago*, 106 Ill. App. 3d 1066, 1074 (1982)), responds to a report of shots fired or a crime in progress (*Bruecks v. County of Lake*, 276 Ill. App. 3d 567, 569 (1995); *Morris v. City of Chicago*, 130 Ill. App. 3d 740, 744 (1985)), or travels to the scene of a multivehicle traffic accident to enforce the traffic laws (*Fitzpatrick*, 112 Ill. 2d at 221-22). By contrast, courts have found that an officer is *not* executing or enforcing the law when he or she "is engaged in routine elements of his official duties," such as transporting a prisoner (*Bruecks*, 276 Ill. App. 3d at 568), "providing service in the nature of a community caretaking function" (*DeSmet*, 219 Ill. 2d at 520), or conducting routine patrol (*Leaks v. City of Chicago*, 238 Ill. App. 3d 12, 17 (1992)).

¶ 65     The other immunity provision referenced by the parties is section 4-107. Titled "Failure to make arrest; release of person in custody," section 4-107 is far more specific and self-explanatory than section 2-202 or the "police protection service" clause of section 4-102. 745 ILCS 10/4-102, 4-107 (West 2020). It reads, "[n]either a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." *Id.* § 4-107.

¶ 66          2. The Immunity Provisions Implicated by Mr. Glover's Amended Complaint

¶ 67     The circuit court granted defendants' motion to reconsider based exclusively on its understanding of our supreme court's decision in *Ries*, 242 Ill. 2d at 220-21, which held that where two tort immunity provisions apply, the more specific provision will prevail over the more general. The circuit court reasoned that "while [sections] 2-202, 4-102 and 4-107 may apply, [sections] 4-102 and 4-107 are the more specific immunities that apply to the plaintiff's complaint and control." In our view, the circuit court's ruling rests on an overly broad application of *Ries*.

¶ 68     In *Ries*, plaintiffs sued the Chicago Police Department and the City for injuries caused by

an escaping prisoner who crashed into them after commandeering a police car that had negligently been left unattended by a police officer. *Id.* at 208. The plaintiffs alleged that the officer's failure to secure his vehicle or to properly restrain the prisoner he was transporting amounted to willful and wanton conduct. *Id.* at 208-09. While a jury entered a verdict in favor of the plaintiffs, this court reversed the verdict on appeal (see *Ries v. City of Chicago*, 396 Ill. App. 3d 418 (2009)). Our supreme court affirmed our reversal, holding that, based on the facts alleged, the officers in that case were immune from liability pursuant to section 4-106(b) of the Act (745 ILCS 10/4-106(b) (West 2008)), a provision which specifically immunizes public entities and their employees from any liability for injuries inflicted by escaping prisoners. *Ries*, 242 Ill. 2d at 228. The court recognized that while section 2-202 was applicable since the officers were unquestionably enforcing a law, section 4-106(b) nonetheless controlled because it was "more specifically applicable." *Id.* at 220.

¶ 69     We agree with the circuit court that where multiple immunity provisions potentially apply, the specific must control over the general. However, in our view, that principle does not resolve the issue presented in this case. Here, the only specific immunity provision implicated by Mr. Glover's allegations is section 4-107. That section exists precisely to provide absolute immunity to public officials for injuries caused by the failure to make an arrest. Thus, no liability in this case can be based on the officers' failure to arrest Mr. Grayson. This is not at issue as Mr. Glover has recognized this and has advised the trial court and this court that he has withdrawn the allegation from his complaint that the officers' failure to arrest or detain Mr. Grayson provided any basis for an actionable claim.

¶ 70     Unlike that now-withdrawn allegation, however, the remaining allegations in Mr. Glover's complaint—including the allegations that the officers caused Mr. Glover to leave the safety of the

bar and confront Mr. Grayson and that the officers directed Mr. Glover to go to his car—do not fall neatly under the purview of a specific immunity provision. These allegations, and the course of police conduct they describe, could well be characterized as either the execution and enforcement of the laws, implicating the qualified immunity of section 2-202, or as a failure to provide police protection service, implicating the absolute immunity of section 4-102.

¶ 71    In his brief, Mr. Glover offers several examples of laws the officers may have been enforcing when they caused him to step outside the safety of the bar and directed him to his car. One obvious candidate, he suggests, is the municipal disorderly conduct ordinance (Chicago Municipal Code § 8-4-010 (amended Sept. 21, 2022)). "[T]heir goal in asking both men to leave," Mr. Glover asserts, "appears to have been to end or prevent any disruption of the peace at the bar, at the behest of the bar owner." Defendants suggest in their own brief that "[t]he police were called upon to help a community business owner manage a disturbance at his bar." If a finder of fact were to conclude that defendants' actions in enforcing and executing these laws were a proximate cause of Mr. Glover's injuries, then defendants would be subject to qualified, rather than absolute, immunity.

¶ 72    For additional support, Mr. Glover also cites *Morris*, 130 Ill. App. 3d at 742. In *Morris*, a plaintiff was injured when a police officer crashed into his car as the officer was responding to a radio call describing a man with a gun. *Id.* The court began by explaining that "[t]he question of whether a police officer is engaged in the execution or enforcement of a law is a factual determination which must, in every case, be made in light of the circumstances involved." *Id.* at 743-44. The court then held that, as a matter of law, section 2-202 applied because when the plaintiff's injury occurred, the defendant officer was responding to an "actual call to enforce or execute the law." *Id.* at 744. The court reasoned that the "undisputed facts show[ed] an unbroken

effort on [the officer's] part to respond to a radio call of a crime in progress." *Id.* He was not "merely on routine patrol" or "retreating from enforcing the law." *Id.* Mr. Glover asserts that the facts he alleged are analogous to those in *Morris* and "even more clearly demonstrate that Defendants were enforcing or executing the laws at all relevant times."

¶ 73 Defendants cite numerous cases in which, they argue, courts found section 4-102 applied in circumstances resembling what is alleged to have occurred here. *Payne*, 2014 IL App (1st) 123010, ¶¶ 1, 3-11 (applying section 4-102 where, during a protective mental health detention, police failed to prevent a man experiencing a drug-induced psychotic episode from leaping from a second story window); *Rodriguez v. Village of Park Forest*, 2021 IL App (1st) 201269-U, ¶¶ 4-11, 33 (applying section 4-102 where a police officer who had reason to suspect the plaintiff was driving drunk allowed the plaintiff to drive off without any investigation, and the plaintiff was subsequently injured in a car accident); *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 368-69 (2009) (applying sections 4-102 and 4-107 where police allegedly promised to provide protection to a woman experiencing domestic abuse who was subsequently murdered by her abuser); *Prough v. Madison County, Illinois*, 2013 IL App (5th) 110146, ¶ 26 (applying sections 4-102 and 4-107 where a man murdered his father after the sheriff's department released him without executing a mental health warrant); *Hernandez v. Kirksey*, 306 Ill. App. 3d 912, 916-17 (1999) (applying section 4-102 where a child was struck by a car after a crossing guard allegedly directed the child to cross an intersection even though there was oncoming traffic); *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634-35 (1996) (applying section 4-102 where a student was killed at a high school in which metal detectors were allegedly inadequately maintained); *Doe v. Village of Arlington Heights*, 782 F.3d 911, 920-21 (7th Cir. 2015) (applying section 4-102 where a police officer called by a property manager to investigate a group of teenagers he saw drinking at an apartment complex

allowed the teenagers to leave the scene, after which one of the teenagers was sexually assaulted by another).

¶ 74    We do not find the cases cited by defendants to be persuasive. The majority of these cases—*Rodriguez*, *Lacey*, *Prough*, *Lawson*, and *Doe*—involve situations where the plaintiff's injury resulted entirely from a public employee's alleged failure to investigate a crime, prevent a crime, or detain someone. These claims all fall exclusively either under a specific prohibition listed in section 4-102, as opposed to section 4-102's more general "police protection" clause, or, as in *Prough* and *Lacey*, under section 4-107. The only case that bears any similarity to what occurred here is *Hernandez*, 306 Ill. App. 3d 912. As in this case, the plaintiff in *Hernandez* alleged that the defendant did some affirmative act (telling her to cross the street) that placed her at risk of getting injured. However, *Hernandez* does not support defendants' position because the potential applicability of section 2-202 was simply not an issue in that case. As the decision makes clear, the plaintiffs took "the position that section 2-202 does not apply here because [the defendant] was not executing or enforcing any law at the time of the accident." *Id.* at 917. In light of the position taken by the plaintiffs in that case, we concluded that we had no reason to address the relationship between sections 2-202 and 4-102 as applied to the facts presented. *Id.*

¶ 75    The other case cited by defendants, *Payne*, 2014 IL App (1st) 123010, involved an injury incurred during a poorly executed protective mental health detention. We were careful in *Payne* to note that the reason section 4-102, rather than section 2-202, applied was because "[t]he police were there not to enforce or execute any law, nor to provide any medical attention (as other personnel were dispatched and on the scene), but rather to provide police assistance to subdue [the] plaintiff for [the] plaintiff's own safety and the safety of his family members." *Id.* ¶ 35. Further, unlike what has been alleged by Mr. Glover, in *Payne* "[t]here was no indication that a crime was

being committed; rather, the call was for assistance for safety and police protection services." *Id.*

¶ 76    As we recognized in *Payne*, "[g]enerally, the question of whether a police officer is executing and enforcing the law under section 2-202, rather than providing police protection or service under section 4-102, is a factual determination which must be made in light of the circumstances involved." *Id.* ¶ 32. In this case, all we have before us is a complaint alleging police conduct that might be described as a failure to protect or, just as reasonably, as acts and omissions in the execution and enforcement of the law. Because this is a scenario that implicates two broad immunity provisions, determining which of these general tort immunity provisions controls is a factual question that can only be made on a more factually developed record.

¶ 77    One final argument defendants make is that, even if they were enforcing the law at some point as they interacted with Mr. Grayson and Mr. Glover, "they plainly stopped doing so before [Mr.] Grayson shot [Mr.] Glover." In our view, this argument suffers from the same problem as defendants' insistence that the officers were not enforcing the law that night: whether someone is engaged in enforcing the law is a fact-intensive question and, at this point, we still lack a developed record on which to make that determination.

¶ 78    In sum, based on the content of Mr. Glover's amended complaint, we agree with the circuit court's reasoning from its initial order, issued on July 12, 2021, that "whether the defendants were executing or enforcing any law at the time of the occurrence is a question of fact to preclude the dismissal of those counts alleging willful and wanton conduct."

¶ 79                                IV. CONCLUSION

¶ 80    For the foregoing reasons, we affirm the circuit court's ruling denying defendants' section 2-615 motion, reverse its ruling granting their section 2-619 motion, and remand for further proceedings on counts III and IV of Mr. Glover's complaint.

23

¶ 81 Affirmed in part and reversed in part; cause remanded.

*Glover v. City of Chicago*, **2023 IL App (1st) 211353**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-L-12770; the Hon. Gerald Cleary, Judge, presiding. |
| **Attorneys for Appellant:** | Elizabeth M. Bartolucci, of Bartolucci Law, LLC, of Oak Park, for appellant. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Suzanne M. Loose, and Julian N. Henriques Jr., Assistant Corporation Counsel, of counsel), for appellees. |